**In the Matter of Dan C. PELLETIER, Respondent.**

**No. 607,2013.**

Supreme Court of Delaware.

Submitted: Jan. 15, 2014.
Decided: Jan. 30, 2014.

**26.** *Id.* at ¶ 50.

**27.** *Id.* at ¶¶ 50–51.

**28.** *See Zirn v. VLI Corp.*, 681 A.2d 1050, 1060–61 (Del.1996).

Patricia Bartley Schwartz, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Dan C. Pelletier, pro se.

Before HOLLAND, BERGER and JACOBS, Justices.

Per Curiam:

This is an attorney disciplinary matter involving Dan C. Pelletier's ("Pelletier") unauthorized practice of law in Delaware. In a report dated October 31, 2013 (the "Report"), the Board on Professional Responsibility (the "Board") found that Pelletier engaged in the unauthorized practice of law in Delaware in violation of the Delaware Lawyers' Rules of Professional Con-

duct (the "Rules") and recommended Pelletier be publicly reprimanded. The Office of Disciplinary Counsel (the "ODC") objects to the Board's recommended sanction and argues that a one-year suspension be imposed. We agree with the position asserted by ODC.

### *Facts and Procedural Background* [1]

Pelletier was admitted to the New Jersey Bar in 1998, but is not now—nor has he ever been—a member of the Bar of the Supreme Court of Delaware. In February 2007, Pelletier established Riddlefield, LLC ("Riddlefield") as a general legal practice. His stated purpose for doing so was to provide a referral service to practicing Delaware lawyers. Engagement letters issued under Riddlefield's header identified Pelletier as a "Member of Riddlefield LLC, 2412 Riddle Avenue, Wilmington, Delaware, and with an office located at 701 White Horse Road, Suite 3, Voorhees, New Jersey." Pelletier's resume, engagement letters, and a flyer used to advertise Riddlefield in January 2009 all state that Pelletier intended to provide legal representation in Delaware. Pelletier testified that based on conversations with (unnamed) Delaware lawyers, he understood this conduct to be permissible under Delaware law.

Pelletier engaged four clients in connection with Riddlefield, all of which were injured in accidents that occurred in Delaware. With all four clients he agreed to "provide legal services including all necessary negotiation, legal research, investigation, correspondence, preparation and appearances." His activities in furtherance of the representation of his clients included

---

1. The facts, taken from the Board Report, are not disputed by the parties. The Petition's allegations were deemed admitted pursuant to Rule 9(d)(2) of the Delaware Lawyers' Rules of Disciplinary Procedure because Pelletier did not file a response to the Petition. Neither the ODC nor Pelletier has objected to the factual findings set forth in the Board Report.

communicating with the tortfeasors' insurance companies on behalf of his clients, and settling one case for $50,000.00. All of Pelletier's work for his clients was performed in Delaware: "all client contact was in Delaware, all of the operative facts occurred in Delaware, and the payment [in connection with the settlement] was made in Delaware."

On June 17, 2013, the ODC filed a Petition for Discipline (the "Petition") against Pelletier. The Petition alleged that Pelletier violated Rule 5.5(b)(1) by establishing an office for the practice of law when he was not admitted to the Delaware Bar (Count I), and that Pelletier violated Rule 5.5(b)(1) by holding out to the public that he was admitted to practice law in Delaware and by marketing Riddlefield and offering to provide legal services in Delaware (Counts II and III).[2] The Board held a hearing on August 13, 2013 at which Pelletier testified.

In its Report, the Board found that Counts I–III were established by clear and convincing evidence, and recommended a public reprimand for Pelletier. Because the allegations were deemed conceded, the Board's analysis focused primarily on the appropriate sanction for Pelletier. The Board noted that this Court follows the American Bar Association ("ABA") Standards to determine the appropriate sanction for misconduct:

> The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b)

the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.

The Board concluded that: (i) Pelletier violated Rule 5.5; (ii) Pelletier "acted negligently by undertaking the representation of . . . clients," (iii) although no clients were injured, injury could have occurred, and (iv) two aggravating factors (substantial experience in the practice of law, and behavior forming a pattern) and three mitigating factors (absence of a prior disciplinary record, absence of dishonest or selfish motive, and cooperative attitude toward proceedings) were present. Because Pelletier acted negligently, rather than knowingly, the Board determined that a public reprimand was an appropriate sanction for Pelletier.

### Standard of Review

■■■ This Court has the "inherent and exclusive authority to discipline members of the Delaware Bar."[3] "We also have the authority to discipline non-Delaware attorneys who provide legal services in this State in violation of our Professional Code of Conduct."[4] Although Board recommendations are helpful, we are not bound by those recommendations.[5] We review the record independently to determine whether there is substantial evidence to support the Board's factual findings.[6] We review the Board's conclusions of law *de novo*.[7]

**2.** A fourth Count was dropped during the proceedings.

**3.** *In re Abbott*, 925 A.2d 482, 484 (Del.2007) (quoting *In re Froelich*, 838 A.2d 1117, 1120 (Del.2003)).

**4.** *In re Kingsley*, 950 A.2d 659, 2008 WL 2310289, at *3 (Del.2008) (TABLE) (footnote omitted) (citing *In re Tonwe*, 929 A.2d 774,

778 (Del.2007); Delaware Lawyers' Rules of Professional Conduct Rule 8.5).

**5.** *In re Martin*, 2011 WL 2473325, at *3 (Del. June 22, 2011) (citation omitted).

**6.** *Id.*

**7.** *Id.*

### ODC's Objections

The ODC objects to the Board's sanctions determination, and urges that this Court impose on Pelletier a one-year suspension. Specifically, the ODC contends that Pelletier's mental state, for purposes of the sanctions analysis, was "knowing," which warrants the imposition of a one-year suspension.

### Pelletier's Mental State

■ The ABA Standards for Imposing Lawyer Sanctions define knowledge as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." [8] Those Standards define negligence as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." [9]

The Board concluded that Pelletier "*knew* that he opened an office in Delaware, entered into engagement letters with clients, and undertook to perform legal services...." Pelletier testified that he was aware that he was not authorized to practice law in Delaware, and that he had *read* the rule regarding the unauthorized practice of law. Rule 5.5(b)(1) provides that a lawyer who is not admitted to the Delaware Bar shall not, "except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law...."

Rule 5.5(b)(2) provides that such a lawyer shall not "hold out to the public or otherwise represent that the lawyer is admitted to practice in [Delaware]." Despite Pelletier's testimony that unidentified Delaware attorneys had advised that his conduct was permissible, it is hard to conceive of how Pelletier could have read the above-quoted rules and not known that opening an office, advertising to potential clients, and signing engagement letters that explicitly provided for "legal services" was not permissible under those Rules.

We recently addressed a similar situation in *In re Nadel* [10] and concluded that the attorney acted knowingly. In *Nadel,* a New Jersey attorney provided pre-litigation (*i.e.,* settlement) services to Delaware citizens. We explained our conclusion thusly:

> Nadel knew that he could not actively represent Delaware clients in court, but he failed to determine any limits on the prelitigation assistance he thought he could provide. Further, he had every opportunity to learn this information. Nadel regularly worked with licensed Delaware attorneys when a client needed to file a claim in court. Moreover, the Delaware Lawyers' Rules and the case law interpreting those rules are also publicly available—something an experienced attorney from any state would know. [11]

That reasoning is similarly applicable here. [12] The Board's determination that Pelletier acted negligently is not supported

---

8. ABA Standards for Imposing Lawyer Sanctions, Definitions, *available at* http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/corrected_standards_sanctions_may2012_wfootnotes.authcheckdam.pdf.

9. *Id.*

10. *In re Nadel,* 82 A.3d 716 (Del.2013).

11. *Id.* at 722.

12. The Board distinguished Pelletier's case from *In re Kingsley,* 950 A.2d 659 (Del.2008) (TABLE), and *In re Tonwe,* 929 A.2d 774, 781 (Del.2007). In those cases, the Board reasoned, the attorneys violated cease and desist orders, and therefore were on notice that their conduct was prohibited. *Id.* Similarly, reading the text of two clear and relatively

by substantial evidence or by this Court's prior decisions. The record reflects that Pelletier acted knowingly.

### The Proper Sanction

■ ABA Standard 7.2 provides that in cases involving the unauthorized practice of law, suspension is appropriate "when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."[13] The application of Standard 7.2 requires that a suspension be imposed.[14] Pelletier knowingly violated Rule 5.5.[15]

Pelletier's conduct (engaging in the unauthorized practice of law) violated a duty he owed as a professional.[16] Although no client was injured in this case, Pelletier's conduct "seriously undermines the legal system."[17] Finally, as explained by the Board, the three identified mitigating factors do not outweigh the two identified aggravating factors, such that a more lenient sanction should be imposed.

### Conclusion

For the foregoing reasons, we hold that a one-year suspension, along with the additional limitations set forth below, would adequately protect the public and the administration of justice, preserve confidence in the legal profession, and deter other lawyers from engaging in similar conduct. Now, therefore, it is hereby ordered that:

1) Pelletier be suspended from the practice of law in the State of Delaware for a period of one year, starting on the date of this order;

2) Pelletier be prohibited from providing advice to any Delaware clients on matters of Delaware law for a period of one year;

3) Pelletier be prohibited from acting *pro hac vice* on any matter in Delaware for a period of one year; and

4) Pelletier pay the costs of these proceedings.

---

unambiguous rules should also put an attorney on notice of prohibited conduct.

**13.** ABA Standards for Imposing Lawyer Sanctions, 7.2.

**14.** *See In re Nadel,* 82 A.3d at 721 ("A suspension falls within the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions for the unlicensed practice of law. Moreover, a suspension provides a stiff deterrent to other out-of-state lawyers, alerting them that the rules governing the representation of Delaware clients are strictly enforced.").

**15.** The Board's determination that a public reprimand was appropriate turned on its finding that Pelletier negligently violated Rule 5.5. The conclusion that Pelletier's violation was "knowing" dictates a more serious sanction.

**16.** *See* ABA Standards for Imposing Lawyer Sanctions, 7.2; *In re Kingsley,* 950 A.2d 659 (Del.2008) (TABLE), at *4 (applying Standard 7 in a case involving the unauthorized practice of law); *In re Tonwe,* 929 A.2d at 780.

**17.** *In re Tonwe,* 929 A.2d at 780.