IN THE SUPREME COURT OF THE STATE OF DELAWARE


In The Matter of a                                §
Member of the Bar of the                          §
Supreme Court of Delaware:                        §
                                                  §    No. 470, 2014
CHRISTOPHER S. KOYSTE, ESQUIRE                     §
                                                  §
          Respondent.                             §

                      Submitted:  February 11, 2015
                      Decided:  February 27, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

Upon Review of the Report of the Board on Professional Responsibility.  **PUBLIC REPRIMAND ORDERED**.

Charles Slanina, Esquire, Finger & Slanina, LLC, Hockessin, Delaware, for the Respondent.

Kathleen M. Vavala, Esquire, Disciplinary Counsel, Wilmington, Delaware, for the Office of the Disciplinary Counsel.




*PER CURIAM*:

# I. INTRODUCTION

This is a lawyer disciplinary proceeding. The respondent, Christopher Koyste, is a solo practitioner, who practices in the areas of criminal defense and land use. The Office of Disciplinary Counsel ("ODC") charged Koyste in an eight-count complaint with violating Rules 3.3(a)(1), 3.4(c), 8.4(c), and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). The ODC alleged that, during the course of representing a client on felony charges involving alleged sexual abuse of the client's stepdaughter, Koyste violated the terms of a protective order ("PO") that had been entered in the case.

After a hearing on the alleged violations, a three-member panel of the Board on Professional Responsibility ("the Board") unanimously found that the ODC had proven four counts of its complaint by clear and convincing evidence. Specifically, the Board found that Koyste had committed two violations each of Rules 3.4(c) (knowingly disobeying a court order) and Rule 8.4(d) (conduct prejudicial to the administration of justice) by knowingly causing images from the victim's cell phone to be shown to the victim's mother and to the defendant in violation of the PO. After a separate sanctions hearing, the two lawyer members of the Board recommended a public reprimand, but the lay member objected, preferring a private admonition instead.[1]

---

[1] The panel was unanimous in its finding of violations but split in its recommendation as to the appropriate sanction. Although Rule 2(c) of the Delaware Lawyers' Rules of Disciplinary Procedure calls for *de novo* review by a five-member panel of the Board if a three-member "panel is unable to reach a unanimous decision on the merits in a case under submission," neither Koyste nor the ODC requested that a five-member panel be convened, and Koyste has argued the merits of his appeal without raising this procedural point. In the past, the Court has interpreted

Contrary to Koyste's argument on appeal, we find that based on the evidence presented, the record supports the Board's finding that he knowingly violated the PO. His misconduct is serious and the Board's recommended sanction of a public reprimand is justified for the reasons set forth in the Board's well-reasoned report.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Stipulated Facts*[2]

Koyste was admitted to the Delaware Bar in 1992. In August 2012, he was appointed to represent Curtis Benn in connection with felony charges of rape in the second degree, sexual abuse of a child by a person in a position of trust, and several other related charges. The alleged victim was Benn's fifteen-year-old stepdaughter.[3]

Koyste retained John Slagowski as a private investigator to assist in Benn's defense. In October 2012, Deputy Attorney General Cynthia Faraone notified Koyste of her intent to seek a protective order from the Superior Court.[4] Koyste and Faraone negotiated the terms of the four-paragraph order through a series of email exchanges. Koyste specifically requested that the following language be removed from the proposed order:

Rule 2(c) to require panel unanimity only as to the finding of violations because the panel's decision on sanctions is only a recommendation to the Court. *See, e.g., In re Chasanov*, 2005 WL 528862 (Del. Feb. 22, 2005). We note the arguable ambiguity in the Rule only to inform the parties that the Court has entered an order amending Rule 2(c) to bring the rule into conformity with the Court's practice and past interpretation.

[2] The facts are taken from the parties' Stipulation of Facts, which was admitted as Exhibit BB at the Board's violations hearing held on March 13, 2014.

[3] Benn ultimately pled guilty to sex offender unlawful sexual conduct with a child and failure to properly register as a sex offender. His convictions and sentence were affirmed by this Court on appeal. *See Benn v. State*, 2015 WL 304257 (Del. Jan. 23, 2015).

[4] Under the Victims' Bill of Rights, 11 *Del. C.* § 9403 *et seq.*, the State is precluded from disclosing witness identifying information unless good cause is shown.

2

Counsel for the defendant, his employees or agents, shall not use any identifying information secured from the materials provided by the State to contact or attempt to contact any witness or potential witness, directly or indirectly, without leave of the Court.

Faraone rejected Koyste's request, noting that the provision was the "cornerstone of a protective order."[5] Koyste eventually agreed to the provision; however, he requested a modification to the proposed order that would allow him to make duplicate copies of the discovery materials for his file and for his investigator. Faraone agreed to this amendment.[6] Ultimately, the Superior Court granted the State's motion and entered the proposed order, without objection, as an order of the court on November 7, 2012.

On November 19, 2012, Faraone gave Koyste a copy of the victim's statement to police and a 911 telephone recording. On March 13 and April 11, 2013, Faraone provided Koyste with a CD containing a download of the contents of the victim's cell phone, including photographs of the victim and others. Each discovery production was accompanied by a cover letter reminding Koyste that the provided materials were subject to the terms of the PO.

Koyste gave a copy of these materials to Slagowski. Koyste directed Slagowski to show certain photos provided by the State to Benn for the purpose of identifying the people in the photographs. Koyste also directed Slagowski to show the photographs to

---

[5] Faraone testified at the violations hearing that she sought the protective order, in part, because she was concerned that photos from the victim's cell phone could be used as a means to harass or embarrass the victim or her friends or would be seen by the victim's mother, whose cooperation in the State's prosecution of her husband was in question.

[6] Koyste responded, "We are in agreement, Cynthia. Thank you for listening to me in relation to these minor issues, as I just wanted to be 100% sure that I could live up to the terms of the agreement, which I now can."

Channel Benn, the defendant's wife and the victim's mother. On April 15, 2013, Koyste was present when Slagowski showed Benn a photo provided by the State. The following week, Koyste directed Slagowski to show Benn the victim's statement and other photos but instructed Slagowski not to leave copies with Benn.[7]

Several days later, Faraone contacted Koyste to determine if Slagowski had shown any of the photos provided during discovery to Mrs. Benn. Koyste later informed Faraone that several photos had been shown to Mrs. Benn and one photo had been shown to Benn. The same day, Koyste notified the Superior Court that he had violated the PO. On April 25, 2013, the Superior Court held an office conference, during which Koyste admitted that he had violated the PO. The judge ordered Koyste to return all discovery materials to the State, to make Slagowski available to be interviewed by Faraone, and to implement changes in his office procedures to ensure he would not commit a violation of this kind again.

On June 5, 2013, Faraone filed a motion requesting that a Rule to Show Cause be issued to Koyste directing him to explain why he should not be sanctioned for violating the PO. Koyste filed a response on June 24, 2013. In his response, Koyste stated, among other things, "I again assert that my violation of the terms of the protective order was due to mistakenly remembering the exact terms. I admit this mistake but contest the State's allegations within their letter that I was less than candid with the Court in relation to this issue." On January 28, 2014, four days after the ODC filed its petition for discipline in

---

[7] Despite this instruction, there was no evidence presented at the hearing that Slagowski actually showed Benn the victim's statement or any additional photos.

4

this case, the Superior Court denied the State's motion without prejudice to the State's right to refile pending final disposition of Benn's criminal case.

### B.     *The Disciplinary Charges and Koyste's Response*

On January 24, 2014, the ODC filed an eight-count petition for discipline against Koyste. Count I alleged that Koyste had violated Rule 3.3(a)(1)[8] by knowingly making or failing to correct a false statement of material fact when he failed to advise the Superior Court judge during the April 25 office conference that he was present when Slagowski showed a cell phone photo to Benn. Counts II, III, and IV alleged that Koyste had violated Rule 3.4(c)[9] by knowingly causing photos to be shown to the victim's mother and to Benn and by knowingly directing Slagowski to show the victim's statement to Benn. Count V alleged that Koyste had violated Rule 8.4(c)[10] by engaging in conduct involving dishonesty, deceit or misrepresentation when he failed to inform the Superior Court judge at the April 25 office conference that he was present when Slagowski showed a cell phone photo to Benn. Counts VI, VII, and VIII alleged that Koyste violated Rule 8.4(d)[11] by engaging in conduct prejudicial to the administration of justice by knowingly causing photos to be shown to the victim's mother and to Benn and

---

[8] Rule 3.3(a)(1) states that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[9] Rule 3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[10] Rule 8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[11] Rule 8.4(d) states that it is professional misconduct for a lawyer to engage "in conduct that is prejudicial to the administration of justice."

by knowingly directing Slagowski to show the victim's statement to Benn as alleged in Counts II, III, and IV.

Koyste filed a response denying all counts of the ODC's complaint. At the Board's hearing, Koyste acknowledged that he had previously told the Superior Court that he had violated the PO. Koyste testified, however, that he later consulted with more experienced criminal defense attorneys who opined that the photographs he had disclosed may not been "identifying information" subject to the PO, which was ambiguous and overly broad. Ultimately, Koyste took the position in the disciplinary proceedings that his admission to the Superior Court that he knew he had violated the PO had been incorrect. Koyste did not dispute that he never consulted the PO before directing Slagowski to show certain discovery materials to Benn and his wife.

### C. The Board's Findings on the Charged Violations

At the violations hearing, which was held separately from the sanctions hearing, the Board heard testimony from Faraone, Slagowski, Koyste, and Thomas Foley, Esquire. Following the violations hearing, the Board unanimously concluded that the ODC had established four of its eight charges by clear and convincing evidence.[12]

Specifically, the Board found that Koyste committed two violations of Rule 3.4(c) (knowingly disobeying a court order) and two violations of Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice) by knowingly causing photos from the State's discovery production to be shown to the defendant and Mrs. Benn in violation

---

[12] The ODC did not file objections to the Board's conclusions that it had failed to establish the other four counts of its complaint by clear and convincing evidence. Those four counts, therefore, are not at issue and are not discussed further.

6

of the PO. The Board rejected Koyste's belated argument that he did not violate the PO because the PO was ambiguous and overly broad and the photos shown by Slagowski did not qualify as "identifying information" covered by the PO. The Board stated:

> The validity of this . . . PO has never been challenged in the underlying criminal case, nor were its terms or enforceability questioned in any respect by the Court. This PO is not a complicated document. It consists of four paragraphs with plain and simple language, language that [Koyste] himself participated in drafting; and it was not subject to more than one interpretation by anyone who read it, including [Koyste], until this disciplinary hearing. Therefore, whether its breadth is unprecedented or contrary to the "norm" for protective orders, [Koyste] negotiated, read, and agreed to be bound by its terms.[13]

The Board found clear and convincing evidence that Koyste's conduct was "knowing" because, among other reasons, Koyste had actively participated in drafting the PO, understood its terms, and specifically acquiesced to the clause prohibiting him or his agents from using the discovery material to identify or contact witnesses. Faraone specifically identified the victim's cell phone download as discovery material governed by the PO, and she reminded Koyste of that in several letters transmitting supplemental discovery to him. Despite his experience with protective orders in other cases, Koyste never objected to the PO as ambiguous or overly broad, nor did he seek review of the PO by the Superior Court. Koyste had a signed copy of the PO and never forgot that Benn's case was governed by a PO.

The Board concluded that, while Koyste may have forgotten the exact terms of the PO, his failure to review the PO (despite numerous opportunities and prompts to do so) amounted to conscious and knowing misconduct, even it if was not Koyste's intention to

---

[13] Board's Report at 17 (Aug. 25, 2014).

7

disobey the PO. The Board found that the terms of the four-paragraph PO were clear and unambiguous. After it was entered, Koyste made no effort to review the PO or take any measures to determine his compliance with the PO before instructing Slagowski to show photos to the defendant Benn and Mrs. Benn.

### D. The Board's Sanction Recommendation

At the Board's separate sanctions hearing in April 2014, Koyste presented the testimony of several witnesses, including several Delaware lawyers associated with the conflicts counsel program, who testified to Koyste's good character and good professional reputation and also testified to the unusual volume of Koyste's other conflict cases during the time he represented Benn. The Board also considered testimony from another Delaware lawyer, John Malik, whom Koyste had previously worked for and who took over the representation of Benn when Benn sought to withdraw his guilty plea. Malik testified to Koyste's good character and reputation. He also offered his opinion that Koyste's violation of the PO in Benn's case had not resulted in any harm to the victim or to Benn because Koyste had been able to negotiate an exceptionally good plea agreement for Benn (notwithstanding Benn's later desire to withdraw his plea).

The Board reviewed the ABA Standards for Imposing Lawyer Sanctions[14] ("the ABA Standards") and concluded that: (i) Koyste had violated Rules 3.4(c) and 8.4(d); (ii) Koyste acted knowingly; and (iii) there was the potential for harm to the victim, to innocent witnesses, to the public, and to the legal system caused by Koyste's violation of

---

[14] The ABA Standards for Imposing Lawyer Sanctions can be found at http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/corrected_standards_sanctions_may2012_wfootnotes.authcheckdam.pdf.

8

the PO, and there was actual injury to the judicial process because the Superior Court and the State were burdened with investigating Koyste's violation of the PO.

The Board found two aggravating factors: (i) Koyste has substantial experience in the practice of law; and (ii) Koyste's misconduct put a vulnerable victim at risk. As mitigating factors, the Board found that Koyste: (i) had no prior disciplinary record; (ii) had no dishonest or selfish motive; (iii) made timely good faith efforts to rectify his misconduct; (iv) made full and free disclosure to the disciplinary board and had a cooperative attitude during the proceedings; (v) has good character and reputation; and (vi) had remorse for his conduct. The Board specifically did not find the following factors to be mitigating: (i) Koyste's personal problems (namely, the unusual volume of his workload at the time); (ii) interim rehabilitation; and (iii) the imposition of other sanctions or penalties.

In determining the appropriate sanction, the Board considered ABA Standards 6.22,[15] 6.23,[16] and 6.24.[17] The Board did not find suspension to be appropriate after weighing the evidence in Koyste's case, this Court's precedents, and the mitigating factors. Instead, the two lawyer members of the panel found Koyste's conduct most analogous to the ABA's Commentary to Standard 6.23, which recommends a public

---

[15] ABA Standard 6.22 states that, "Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding."

[16] ABA Standard 6.23 states that, "Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding."

[17] ABA Standard 6.24 states that, "Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding."

reprimand: "Most courts impose a reprimand on lawyers . . . who violate a court order or rule that cause injury or potential injury to a client or other party . . . ."[18] In the Board majority's opinion, the examples cited in the Commentary to Standard 6.23 reflect "a deviation from a standard of care that a reasonable lawyer would or should have exercised under the circumstances."[19]

The panel reviewed the Court's previous case law and the mitigating and aggravating factors in the case. Ultimately, two of the panel members concluded:

> A sanction of a public reprimand contemplates the numerous mitigating factors here, weighed against the finding of this Board under the ABA four-factor analysis that could otherwise warrant a presumptive initial sanction of suspension. Public reprimand will also promote the objectives of educating other lawyers to prevent similar conduct, and of protecting the public as well as the sanctity of protective orders in legal proceedings.

The third member of the panel, the lay member, filed a dissenting opinion as to the recommended sanction. The lay member found that the substantial mitigating factors in this case warranted a private, rather than public, admonition. She also expressed her view, as a member of the public, that she did not believe that the public needed to be warned about Koyste or protected from his conduct in any way.

## III.  DISCUSSION

### A.     Standard of Review

This Court has the inherent and exclusive authority to discipline members of the Delaware Bar.[20] Although the panel's recommendations are helpful, the Court is not

---

[18] ABA Standard 6.23 Commentary (1992).
[19] Board's Report at 37.
[20] *In re Nadel*, 82 A.3d 716, 719 (Del. 2013).

bound by them.[21]   We have an obligation to review the record independently and determine whether there is substantial evidence to support the Board's factual findings.[22] The Board's conclusions of law are subject to *de novo* review.[23]

### B.    *Koyste's Contentions on Appeal*

Koyste contends that the Board erred because it failed to credit his testimony regarding the reasons he forgot the specific terms of the PO in Benn's case.[24]   Koyste also asserts that ODC failed to prove by clear and convincing evidence that the photos from the victim's cell phone were actually "identifying information" covered by the PO. Next, Koyste argues that, even assuming the Board properly found he violated the PO, the Board erred in finding that his misconduct was "knowing."   Finally, Koyste contends that the sanction is too severe.

### C.    *Analysis*

We must independently review the record to determine if there is clear and convincing evidence to support a finding of knowing misconduct.[25]   Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the contention is "highly probable."[26]   Under the DLRPC, "knowing" misconduct denotes "actual knowledge of the fact in question."[27]   Because a person is presumed to intend the

---

[21] *Id*. at 720.
[22] *In re Abbott*, 925 A.2d 482, 484 (Del. 2007).
[23] *Id*.
[24] Respondent's Objections at p. 5 (Sept. 24, 2014).
[25] *In re Bailey*, 821 A.2d 851, 863 (Del. 2003).
[26] *Id*.
[27] DEL. LAWYERS' R. PROF. CONDUCT 1.0(f).

11

natural consequences of his or her actions, "knowing" misconduct may be inferred from the circumstances.[28]

As we recently held in *In re Martin*, a lawyer's admitted willful ignorance of a Court's order is tantamount to "knowledge" and does not absolve the lawyer of his responsibility for complying with the terms of the Court's order.[29]  Similarly, in *In re Pelletier*, we rejected the respondent's argument that his unauthorized practice of law in Delaware was only negligent because he had relied on the advice of Delaware lawyers opining that his conduct was permissible.[30]  We stated, "it is hard to conceive of how Pelletier could have read the [Court's] rules and not known that [his conduct] was not permissible under those Rules."[31]

For the reasons meticulously outlined by the Board, the record supports a finding by clear and convincing evidence that Koyste knowingly violated the PO in Benn's case. Koyste actively participated in drafting the PO, understood its terms, and specifically acquiesced to the clause prohibiting him or his agents from using the discovery material to identify or contact witnesses.  The terms of the four-paragraph PO were clear and unambiguous.  Koyste had a signed copy of the Superior Court's and never forgot that Benn's case was governed by a PO.  Despite several reminders from the prosecutor about the terms of the PO, Koyste made no effort to review the Superior Court's order or take

---

[28] *Id.*
[29] *In re Martin*, 2014 WL 6998797, *6 (Del. Nov. 18, 2014).
[30] *In re Pelletier*, 84 A.3d 960, 963 (Del. 2014).
[31] *Id.*

any measures to determine his compliance with the PO before instructing his investigator to show the discovery materials to Benn and his wife.

Accordingly, the record establishes that Koyste violated: (i) Rule 3.4(c) by knowingly disobeying the PO;[32] and (ii) Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice.[33] Koyste's first three arguments on appeal are therefore without merit.

### E. Appropriate Sanction

The goals of lawyer discipline are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct.[34] This Court has consistently held that the purpose of lawyer discipline is *not* to punish lawyers.[35] In determining the appropriate sanction in a lawyer disciplinary matter, the Court follows the framework set forth in the ABA Standards.[36] The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty or duties violated; (b) the lawyer's mental state; (c) the extent

---

[32] *See In re Kingsley*, 2008 WL 2310289 (Del. June 4, 2008) (knowing violation of Rule 3.4(c) for assisting Delaware accountant in violating prior cease and desist order); *In re Shearin*, 765 A.2d 930, 937 (Del. 2000) (knowing violation of Rule 3.4(c) for violating Court of Chancery injunction).

[33] *See In re Abbott*, 925 A.2d 482, 486-87 (Del. 2007) (lawyer's disruptive conduct wasted judicial resources and violated Rule 8.4(d)); *In re Tos*, 576 A.2d 607, 610 (Del. 1990) (knowing violations of court obligations are prejudicial to the administration of justice and violate Rule 8.4(d)).

[34] *In re Reardon*, 759 A.2d 568, 575 (Del. 2000).

[35] *Id.*

[36] *Id.*

13

of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[37]

In this case, the Board carefully considered the ABA framework. Two members of the panel concluded that, while the presumptive sanction under ABA Standard 6.22 for Koyste's knowing violation of a court order (which caused injury or potential injury) was suspension, a public reprimand was the appropriate sanction in Koyste's case in light of this Court's case law and the mitigating factors presented.

We agree with the majority's analysis and adopt it. Notwithstanding Koyste's contention to the contrary, the Board properly found that his violation of the PO caused potential injury to the vulnerable, teenage victim in Benn's case and caused actual injury to the legal system.[38] The PO was entered in accordance with statutory provisions designed to protect victims. For a member of the Bar to knowingly violate such an order is not a trivial matter, nor is failing to be candid about doing so when the violation is revealed. Thus, we disagree with the minority panel member's recommendation for a private admonition, which was based in part on her conclusion that Koyste's violation of the PO presented "no danger to the public."[39]

---

[37]*In re Lassen*, Del. Supr., 672 A.2d 988, 998 (1996).

[38] *See In re Tonwe*, 929 A.2d 774, 780 (Del. 2007) (holding that disregard for a court order "seriously undermines the legal system").

[39] Board's Report at 39. The minority panel member also cited to this Court's imposition of a private admonition in the case of *In re Member of the Bar*, No. 746, 2010 (Del. June 28, 2011). In that case, the lawyer admitted to violating a PFA against him by having an intermediary contact his wife on his behalf. There was no direct contact, but the lawyer pled guilty to violating the PFA. The ODC sought a private admonition, but the Board recommended dismissal of the complaint with a warning. The Court rejected the Board's recommendation and imposed a private admonition. In our view, that case is distinguishable because, although the lawyer knowingly violated a court order, the violation involved a personal obligation and not a

The majority of the panel carefully considered all of the evidence in mitigation and appropriately determined that the sanction of public reprimand was more consistent with our relevant prior precedent. The Board cited *In re Guy*,[40] in which we held that the lawyer's repeated disregard for orders of the court warranted a public reprimand. Similarly, in *In re McDonald*,[41] this Court found a public reprimand appropriate for a lawyer's disregard of CLE obligations and failure to respond to inquiries from the ODC. Also, in *In re Mekler*,[42] we adopted the Board's findings that the respondent had violated Rules 3.4(c) and 8.4(d) when he made a false statement to the Family Court and imposed the recommended sanction of a public reprimand. Finally, in both *In re Doughty*[43] and *In re Benson*,[44] we concluded that the lawyers' negligent misrepresentations regarding their compliance with their bookkeeping and tax obligations violated Rules 8.4(c) and 8.4(d) and warranted a public reprimand given the potential for serious harm to their clients.

## IV. CONCLUSION

Considering all of the facts in this case, the ABA Standards, and our relevant previous cases, we conclude that a public reprimand is the appropriate sanction in Koyste's case. Therefore, we approve and adopt the majority panel's report and recommendation.

---

duty owed to a client. Moreover, as the Board found and the ODC conceded, no harm resulted from his violation of the PFA because there was no direct contact. Moreover, there was evidence that the parties had been attempting to reconcile and that both of them had been violating the no contact order.

[40] 1994 WL 202279 (Del. May 5, 1994).
[41] 2000 WL 975120 (Del. June 12, 2000).
[42] 1993 WL 61674 (Del. Feb. 9, 1993).
[43] 832 A.2d 724 (Del. 2003).
[44] 774 A.2d 258 (Del. 2001).