# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| In the Matter of a Member | § | No. 303, 2015 |
| Of the Bar of the Supreme | § | |
| Court of the State of Delaware: | § | |
| | § | |
| R. DAVID FAVATA, ESQUIRE | § | |
| Respondent | § | |

Submitted: July 9, 2015
Decided: July 27, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon Review of the Report of the Board on Professional Responsibility.
**SUSPENSION ORDERED**.

R. David Favata, Esquire, Respondent, *pro se*.

Jennifer-Kate Aaronson, Esquire, and Kathleen M. Vavala, Esquire, Disciplinary Counsel, Wilmington, Delaware, for the Office of Disciplinary Counsel.

*Majority, Per Curiam*:

This in an attorney disciplinary proceeding involving charges of professional misconduct against the Respondent, R. David Favata. A panel of the Board on Professional Responsibility (The "Board") found that Favata violated the following Delaware Lawyers' Rules of Professional Conduct: one violation each of Rule 3.3(a)(1) (knowingly made a false statement of fact to a tribunal); Rule 3.4(e) (stated a personal opinion as to the credibility of a witness and/or the guilty of an accused); Rule 3.5(d) (engaged in conduct intended to disrupt a tribunal and/or in undignified and discourteous conduct that was degrading to the tribunal); and Rule 8.4(c) (engaged in conduct involving dishonesty, deceit or misrepresentation); and three violations of Rule 8.4(d) (engaged in conduct prejudicial to the administration of justice). The Board recommended that Favata receive a Public Reprimand. Neither Favata nor the Office of Disciplinary Counsel has filed any objections to the Board's findings and recommendation.

We have concluded that the Board's factual findings of seven ethical violations are supported by the record. We have determined that the appropriate sanction is a suspension for six months and one day. This sanction will require Favata to establish his rehabilitation before he can be re-admitted to practice law as a member of the Bar of this Court.[1]

---

[1] DEL. LAWYERS' RULES OF DISCIPLINARY PROCEDURE R. 22.

### *Background Facts*[2]

Favata is a member of the Bar of the Supreme Court of Delaware, having been admitted in 1988.  At all times relevant hereto, Favata was a Deputy Attorney General employed by the Delaware Department of Justice in Kent County.

On July 6, 2010, the State of Delaware indicted Isaiah W. McCoy ("McCoy") on charges of Murder in the First Degree (Intentional Murder), Murder in the First Degree (Felony Murder), Possession of a Firearm During the Commission of a Felony (two counts), Robbery in the First Degree, Possession of a Firearm by a Person Prohibited, Kidnapping in the First Degree, Conspiracy in the Second Degree and Theft of a Motor Vehicle.  The State noticed its intent to seek the death penalty.  Favata and his co-counsel prosecuted McCoy on behalf of the State during the guilt and penalty phases of McCoy's trial.

On the second day of jury selection, the trial judge granted McCoy's application to proceed *pro se* and designated McCoy's court-appointed defense counsel as "Standby Counsel."

The jury convicted McCoy of two counts of Murder in the First Degree, two counts of Possession of a Firearm during the Commission of a Felony and one count each of Robbery in the First Degree and Conspiracy Second Degree, all

---

[2] These undisputed facts are taken from the Board's Report.

counts charged except for the count alleging motor vehicle theft.[3] The trial court sentenced McCoy to death.

### *Appeal and Reversal*

McCoy appealed his convictions and sentence to this Court. In *Isaiah W. McCoy v. State of Delaware*,[4] we held that reversible error occurred when Favata engaged in prosecutorial misconduct by improperly vouching for the credibility of a State's witness, Rekeisha Williams ("Williams").[5] Favata stated:

> Objection, Your Honor. Again, this witness has testified she didn't even know this guy. She hasn't seen him. She didn't talk to him. **She obviously hasn't spoken to the defendant since he shot her boyfriend.** How would she know anything about Deshaun White; what he said to anybody.[6]

"By giving his own opinion on the guilt of McCoy," Favata improperly vouched for Williams' testimony by expressing his personal opinion that McCoy was guilty[7] and "implicitly and inappropriately corroborated Williams' testimony and endorsed her credibility."[8] "[Favata's] vouching prejudicially affected McCoy's substantial rights to a fair trial and require[d] the reversal of McCoy's convictions."[9]

---

[3] *McCoy v. State*, 122 A.3d 239, 244 (Del. 2015).
[4] *Id.* at 230-44.
[5] *Id.* at 258.
[6] *Id.* (emphasis in original).
[7] *Id.* at 260-61.
[8] *Id.*
[9] *Id.* at 261-62.

In addition to vouching, this Court held that Favata engaged in a pattern of unprofessional conduct throughout the trial, which included improper commentary,[10] attempts to prevent Standby Counsel from providing assistance to McCoy,[11] and disparaging remarks about McCoy with numerous demeaning comments focused on McCoy's self-representation.[12] We held, as follows:

> Although most of this misconduct occurred outside the jury's presence, the conduct set a tone for the trial that was disturbing and unacceptable and increased the potential that the jury would decide the case by discounting the defendant's version of events for inappropriate reasons, a factor made even more important given the centrality of witness credibility in this case. That conduct also was of a nature calculated to hamper McCoy's ability to present his defense effectively, another relevant factor in persuading this Court that we cannot conclude this instance of vouching can be deemed harmless. Accordingly, application of the *Hughes* test establishes the prosecutor's vouching prejudicially affected McCoy's substantial rights to a fair trial and requires the reversal of McCoy's convictions.[13]

This Court concluded that Favata's "conduct during McCoy's trial frequently did not comport with [the] fundamental professional requirements [set forth in Rules 3.5 and 3.8]."[14] Citing Rule 3.5(d) and the American Bar Association's Standards governing prosecution and defense functions, we stated:

---

[10] *Id.* at 262-66.
[11] *Id.* at 263-64.
[12] *Id.* at 261-66.
[13] *Id.* at 261-62.
[14] *Id*. at 262.

The Delaware Lawyers' Rules of Professional Conduct state that a lawyer shall not "engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct that is degrading to a tribunal."

In keeping with the American Bar Association's standards governing prosecution and defense functions, we have held that it is improper for the prosecutor to disparage defense counsel or 'sarcastically to mock the defense case . . . .' While a prosecutor "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

The record reflects that the prosecutor mocked McCoy during cross-examination, attempted to prevent him from using his standby counsel for legal research and logistical assistance, and actively generated a level of "cynicism" that permeated the trial, to quote the trial judge. Even if some of their efforts at preventing McCoy's standby counsel from assisting him were unsuccessful and even if most of their sarcastic comments were made outside the jury's presence, the prosecutor's repetitive pattern of unprofessional conduct set a tone for trial that is inconsistent with the due process rights of a capital murder defendant.

A defendant has a right, under the Sixth Amendment to the United States Constitution, to proceed *pro se* in a criminal trial. . . . Prosecutorial misconduct that disparages a defendant for making the choice to proceed *pro se* interferes with his right to a fair trial and his right of self-representation. The record in this case reflects that the prosecutor's conduct was so demeaning and belligerent to McCoy, outside the presence of the jury, that it reasonably could have affected the effectiveness of McCoy self-representation in front of the jury.

> The record reflects a pattern of unprofessional conduct by the prosecutor that impugns the integrity of the judicial process. Most of the sarcasm directed at McCoy related directly to his choice to exercise his right to defend himself under both the Sixth Amendment to the United States Constitution and Article 1, Section 7 of the Delaware Constitution. . . . The prosecutor's unprofessional conduct in McCoy's case is the antithesis of the high standards that are the hallmark of Delaware lawyers and must not be repeated.[15]

We noted that the trial judge attempted multiple times to "rein in [Favata's] behavior," including several cautions and admonishments, and an extensive reprimand during the penalty phase.[16]

### *The Omerta Comment*

During a recess on July 5, 2012, Favata made several statements regarding "Omerta," a code of silence associated with the Italian mafia, and its similarities to the Bloods' code of silence requiring its members to refuse to provide information to the police, as well as what might happen to someone who violated these codes. Favata's comments were heard by McCoy and the Prothonotary, Carol Lemieux. *As Favata ultimately admitted, his comments were meant to be heard by McCoy* and began as soon as McCoy was brought into the courtroom by the prison guard. Favata's comments included that the prosecution would put Detective Pires back on the stand to tell everyone that McCoy was a "snitch," that there would be a

---

[15] *Id.* at 265-66 (internal footnotes omitted).
[16] *Id.* at 265.

7

reporter there from the News Journal, and that McCoy could have trouble back at the prison after other inmates learned that McCoy had "snitched."

McCoy alerted the trial judge to Favata's comments when the trial judge resumed the bench. According to McCoy, Favata mentioned McCoy's "ratting on [his] associates and friends and how they would possibly be coming after [him] and . . . [Favata] planned to bring this out." McCoy stated that Favata told him that if he broke his gang oath, "that the inmates are going to get [him]," and that McCoy was "hiding" at the correctional facility.

The trial judge inquired about the truth of what McCoy alleged. Favata denied that he was talking to McCoy.

> MR. FAVATA: I was not talking to him, Your Honor, at all. I was talking to Ms. Weaver and Detective Ryde.
>
> THE COURT: So there's no direct communication between Mr. McCoy and yourself?
>
> MR. FAVATA: I don't have any communication with him.
>
> THE COURT: There should not be any direct communication unless it was something of substance and its related to what could be said between one lawyer to another lawyer or someone acting a as lawyer for yourself as you are in that capacity.
>
> [McCoy] Your Honor, I'm not the only person in this courtroom. How could I make up me and him having a conversation that we never had? All of the attorneys are officers of the

8

Court and bottom line is at no point in time he's denying what I said he said, he never denied that. He's just trying to say that he didn't talk to me. There were other people present.

Responding to McCoy's concern, the trial judge tried to determine what had transpired: "If it was not stated on the record, is there any way which I can ascertain whether in fact it was said to you or not? Is this on the record or not?" Because Favata's comments were not recorded, *the trial judge relied on Favata's representation, i.e., that he was not talking to, and did not communicate with, McCoy*:

THE COURT: Apparently, from what Mr. Favata told the court, the conversation was not directed to you, you may have been – you may have been trying to listen in to hear a conversation and that was your summation but from what I've been told here I have no – Mr. Favata indicates he was not talking to you whatever he was talking about so – that's all I can say.

[McCoy] Your Honor, I'm shocked that Mr. Favata would lie to the court that way.

THE COURT: Mr. McCoy, I know what you're trying to do. You're trying to put this on the record. You've already made your allegation on the record of what you believe was said but apparently the court finds it was not said to you. You have no proof of that at this point. I'm not going to delve into it. This applies to the State as well. I don't want any more conflicts of this nature to occur.

9

THE COURT: [L]et me just say this.  Mr. Favata, I hope this communication did not take place.  If you made that statement, whether it's between you and Mr. McCoy or between you and someone else, it should not be made in open court if it was made, and I'm not saying you admit the fact that you made these comments, but they should not be made.  If you expect that any comments like that or similar to that, it is not to be overheard in open court.  Okay?

MR. FAVATA: Yes, Your Honor

*When testimony was resumed, the Prothonotary was so disturbed by Favata's conduct and her perception of his misrepresentation to the court that he "was not talking to [McCoy] . . . at all" and "[doesn't] have any communication with [McCoy]," that she wrote the trial judge a note saying "McCoy was telling the truth."*  To prove its allegation that Favata lied to the trial judge, ODC called the Prothonotary to testify at this disciplinary proceeding.  She testified that the trial judge called her into chambers to make a more thorough examination into the meaning of her note.

On September 14, 2012, Favata finally admitted making *some* of the comments at issue in the State's Response to McCoy's Motion for a Rule to Show Cause/Sanctions, but did not properly acknowledge any reference to McCoy and

10

*falsely* stated that McCoy was "eavesdropping." In response to McCoy's Motion

for Sanctions, Favata asserted:

> [T]he undersigned prosecutor informed the Court that McCoy was eavesdropping on a conversation between he, his co-counsel and the chief investigating officer about the similarities between the Mafia's code of silence ("Omerta") and the Bloods [sic] code of conduct requiring Bloods never to provide information to the police, as well as what might happen to someone who violated these codes. McCoy's attempt to resurrect this issue is nothing more than a blatant attempt to gain some revenge on the prosecutor who successfully prosecuted him. The Court did not believe it then, and should not do so now.[17]

### *Trial Judge Reprimands Favata*

Shortly thereafter, and following another inappropriate comment by Favata,

the trial judge reprimanded Favata:

THE COURT: Listen, I'm reaching a level which I am very upset [about] [t]he way the prosecution is handling this case. I don't appreciate smart-ass remarks, pardon my French but that's what it is, [Favata]. You're being disrespectful to the Court as well as to Mr. McCoy and witnesses. Your antics in this trial have been totally disrespectful, in my view, of what properly should happen in a court procedure, particularly a serious matter like this. I don't appreciate off-the-cuff remarks. I don't appreciate your making frivolous statements in my view or matters which

---

[17] State's Response to Defendant's Motion for Sanctions/Rule to Show Cause at 3, Sept. 13, 2012.

should be taken seriously. I don't like the cynicism that's being generated. I don't like the facial expressions that you make sometimes. I can expect some of that from Mr. McCoy because he's a criminal defendant. He's acting as his own counsel. He's inexperienced.

You, sir, are an experienced trial lawyer and I expect some better conduct out of you and Ms. Weaver [co-counsel] to some extent. Ms. Weaver is less culpable than you are in my opinion. Let's get that out on the table, OK?[18]

### *The Seven Counts Against Favata and Board's Findings*[19]

## COUNT ONE: IN VIOLATION OF RULE 3.3(a)(1),[20] FAVATA KNOWINGLY MADE A FALSE STATEMENT OF FACT TO A TRIBUNAL

Favata, in his Amended Answer to the Board, finally admitted to the fact that he intended for McCoy to overhear his remarks. The Board found that by knowingly making false statement(s) of fact to the Superior Court that (i) he "was not talking to [McCoy] . . . at all"; (ii) he "[did not] have any communication with [McCoy]"; and (iii) McCoy was "eavesdropping" on a conversation between Favata, co-counsel and the chief investigating officer; and because he failed to

---

[18] *McCoy*, 112 A.3d at 265.

[19] This section of the opinion is taken from the Board's Report.

[20] Rule 3.3(a)(1) requires that a "lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 3.3(a)(1).

correct these false statement(s) of material fact previously made to the Superior Court, Favata violated Rule 3.3(a)(1).  We agree with the Board.

**COUNT TWO: IN VIOLATION OF RULE 3.4(e),[21] FAVATA, IN TRIAL, STATED A PERSONAL OPINION AS TO THE CREDIBILITY OF A WITNESS AND/OR THE GUILT OF AN ACCUSED**

By stating his personal opinion about the credibility of a witness, Favata was guilty of vouching for the credibility of a State's witness, Favata violated rule 3.4(e).  Because this Court so found,[22] an independent finding by the Board was unnecessary.

**COUNT THREE: IN VIOLATION OF RULE 3.5(d),[23] FAVATA ENGAGED IN CONDUCT INTENDED TO DISRUPT A TRIBUNAL AND/OR IN UNDIGNIFIED AND DISCOURTEOUS CONDUCT THAT WAS DEGRADING TO A TRIBUNAL**

The Petition alleged that by making improper commentary, attempting to prevent Standby Counsel from providing assistance to McCoy, and making disparaging remarks about McCoy with numerous demeaning remarks focused on McCoy's self-representation, Favata engaged in conduct intended to disrupt the tribunal and/or engaged in undignified and discourteous conduct that was degrading to the tribunal, in violation of Rule 3.5(d).  Favata admitted this

---

[21] Rule 3.4(e) states that a lawyer shall not "in trial, . . . assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, [or] the guilt or innocence of an accused . . . ."  DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 3.4(e).

[22] *See McCoy*, 112 A.3d at 260-61 (citing Rule 3.4(e)).

[23] Rule 3.5(d) prohibits a lawyer from engaging "in conduct intended to disrupt a tribunal or engaging in undignified or discourteous conduct that is degrading to a tribunal."  DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 3.5(d).

violation. However, at the beginning of the Hearing, ODC announced that it would not proceed with that theory; instead, it "proceed[ed] under the theory that he engaged in conduct that was undignified and discourteous or degrading to a [tribunal], not to disrupt the tribunal." Favata readily admitted that his conduct violated the Rules of Conduct under this alternate theory. Accordingly, we agree that the Board's finding that Favata was guilty on this count was supported by the record.

## COUNT FOUR: IN VIOLATION OF RULE 8.4(c),[24] RESPONDENT ENGAGED IN CONDUCT INVOLVING, DISHONESTY, DECEIT OR MISREPRESENTATION

By making false statement(s) to the Superior Court (i) that he "was not talking to [McCoy] . . . at all"; (ii) that he "[did not] have any communication with [McCoy]"; (iii) that McCoy was "eavesdropping" on a conversation between Respondent, co-counsel and the chief investigating officer; and (iv) by failing to correct these false statement(s) previously made to the Superior Court, Respondent violated Rule 8.4(c). Again, Respondent admitted to this violation.

---

[24] Rule 8.4(c) provides, *inter alia*, it is professional misconduct for a lawyer to "engage in conduct involving dishonesty . . . deceit or misrepresentation." DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 8.4(c).

**COUNT FIVE: IN VIOLATION OF RULE 8.4(d),[25] FAVATA ENGAGED IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE**

By knowingly making a false statement(s) of fact to the Superior Court (i) that he "was not talking to him [McCoy] . . . at all"; (ii) that he "[did not] have any communication with [McCoy]"; (iii) that McCoy was "eavesdropping" on a conversation between Favata, co-counsel and the chief investigating officer; and (iv) failing to correct these false statement(s) of material fact previously made to the Superior Court, Favata engaged in conduct prejudicial to the administration of justice, in violation of Rule 8.4(d). Favata admitted to this violation as well.

**COUNT SIX: IN VIOLATION OF RULE 8.4(d), FAVATA ENGAGED IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE**

By expressing his personal opinion regarding McCoy's guilt and vouching for the credibility of a State's witness, we agree with the Board's finding that Favata engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d). Favata admitted to this violation.

---

[25] Rule 8.4(d) prohibits a lawyer from engaging "in conduct prejudicial to the administration of justice." DEL. LAWYERS' RULES OF PROF'L CONDUCT R. 8.4(c).

**COUNT SEVEN: IN VIOLATION OF RULE 8.4(d), FAVATA ENGAGED IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE**

By engaging in a repetitive pattern of unprofessional conduct, as set forth in paragraphs 10 through 13 of the Petition, which interfered with McCoy's right to a fair trial and his right to self-representation and/or impugned the integrity of the judicial process, we agree that the Board's finding that Favata engaged in conduct which was prejudicial to the administration of justice in violation of Rule 8.4(d) was supported by the record. Favata admitted to this violation.

With all seven counts being admitted by Favata or found by this Court on appeal, (*i.e.*, Counts Two and Three), the Board concluded that the ODC had met its burden of proving facts of the alleged ethical violations by clear and convincing evidence.[26] The only matter left for the Board to decide was a sanction recommendation.

### *ABA Sanction Standards*

In reaching its recommendation of an appropriate sanction, the Board considered the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards"):

> The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the actual potential injury

---

[26] *Compare In re Lassen*, 672 A.2d 988, 994 (Del. 1996).

16

caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[27]

The Board also relied upon the ABA Standards for Imposing Lawyer Sanctions in determining what the sanction against Favata should be, specifically Standard 6.0: Violations of Duties Owed to the Legal System. The Board determined that the introduction was instructive:

> Lawyers are officers of the Court, and the public expects lawyers to abide by the legal duties of substance and procedure which affect the administration of justice. Lawyers must always operate within the bounds of the law, and cannot create or use false evidence or make a false statement or material fact.[28]

The ODC directed the Board's attention to Standard 6.2, which provides for sanctions "in cases involving *failure . . . to obey an obligation under the rules of a tribunal . . . .*"[29] More specifically, Standard 6.22 provides:

> Suspension is appropriate when a lawyer *knowingly* violates a court order or rule, and there is injury to a client or a party, or interference or potential interference with a legal proceeding.[30]

The Board found that Favata acted *knowingly* when he committed the transgressions to which he was charged and which the Board found Favata committed. Accordingly, the Board acknowledged that, according to the applicable ABA Standards, the presumptive sanction is suspension. Nevertheless,

---

[27] *In re Koyste*, 111 A.3d 581, 589 (Del. 2005).
[28] ABA Standards for Imposing Lawyer Sanctions, at 6 (1992).
[29] *Id.* at Standard 6.2.
[30] *Id.* at Standard 6.22.

17

the Board recommended a public reprimand as the appropriate sanction after considering the aggravating and mitigating factors.

## *Attorney Discipline*

This Court has the exclusive authority for admitting and disciplining persons with regard to the practice of law in Delaware.[31] The nature of the relationship between this Court and an attorney was summarized by Victor B. Woolley in his seminal treatise on Delaware practice:

> The chief characteristic of an attorney-at-law is that he is an officer of the court. . . . He is an officer of the court, admitted as such by its order, upon evidence of his possessing sufficient legal learning and fair private character. The order of admission is the judgment of the court that he possesses the requisite qualifications as an attorney, and is entitled to appear as such and conduct causes therein.
>
> It is the right of which he can be deprived only by the judgment of the court, for moral or professional delinquency.[32]

All lawyers take an oath upon their admission to the Bar of this Court. The oath is a solemn promise of competent and ethical conduct, which dates back to the beginnings of the legal profession.[33] It is a venerable "tradition in both form and

---

[31] *In re Green*, 464 A.2d 881, 885 (Del. 1983).

[32] 1 Victor B. Woolley, *Woolley on Delaware Practice* § 96 (1906) (citing *Ex parte Garland*, 71 US. (4 Wall.) 333, 378-79, 18 L.Ed. 366 (1866)).

[33] Carol Rice Andrews, *The Lawyer's Oath: Both Ancient & Modern*, 22 GEO. J. LEGAL ETHICS 3, 4 (2009).

substance."[34]  Honesty was a central requirement in the attorney's oath that was used in the era of Justinian.[35]

Today, lawyers in the United States swear to one of three basic forms of oath – the English simple oath, the English "do no falsehood" oath, or the Swiss (ABA) detailed oath.[36]  Honesty is a common principle that remains a constant in the attorney oath for every state regardless of the format.

Delaware and a number of other states continue to use a version of the venerable "do no falsehood" oath.[37]  Delaware first adopted the "do no falsehood" oath in 1704.[38]  In 1721, Delaware shortened its variation of the "do no falsehood" oath, and three centuries later, that is essentially the form of oath used today.[39]  Thus, Favata took the following oath upon his admission to the Delaware Bar:

> "I . . ., do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of the State of Delaware; that I will behave myself in the office of an Attorney within the Courts according to the best of my learning and ability and with *all good fidelity as well to the Court as to the client; that I will use no falsehood* nor delay any person's cause through lucre or malice."[40]

---

[34] *Id.*
[35] *Id.* at 9-17.
[36] *Id.* at 45-49.
[37] *In re Davis*, 43 A.3d 856, 865 (Del. 2012).
[38] Josiah Henry Benton, *The Lawyer's Official Oath and Office* 44 (1909).
[39] *See id.*; *see also In re Abbott*, 925 A.2d 482, 487 (Del. 2007) ("[Delaware's] oath is, in its essential language, the same one taken by Delaware lawyers since colonial days.")
[40] DEL. SUPR. CT. R. 54 (emphasis added).

Two fundamental ethical principles in the Delaware oath are to act with fidelity to the Court and to use no falsehood.[41] The record reflects that Favata violated these fundamental ethical principles, in the context of committing many other violations of the Delaware Lawyers' Rules of Professional Conduct.

### *Sanction is Suspension*

Two prior precedents are particularly relevant in this proceeding.[42] In both *Chasanov* and *Amberly*, the attorneys ethical violations included making false statements to a court (Rule 3.3) and engaging in dishonesty and misrepresentation which reflected adversely on the lawyer's fitness to practice law (Rule 8.4). In both cases, this Court imposed a suspension of six months. A suspension of six months or less permits re-admission without a demonstration of rehabilitation.

In Favata's case, the context and nature of the Omerta statements constitute a significant aggravating circumstance. Favata initially falsely denied making the Omerta statements to McCoy. When the Prothonotary corroborated McCoy's account, Favata admitted only part of the substance and then falsely accused McCoy of eavesdropping. The complete substance of the Omerta statements was intended to intimidate McCoy, who was acting *pro se*, and put him in fear of bodily harm in prison. Favata now *admits* that he intended for McCoy to hear the intimidating Omerta statements about prison reprisals. Such improper conduct

---

[41] *In re Davis*, 43 A.3d at 863-65.
[42] *In re Amberly*, 996 A.2d 793 (Del. 2010); *In re Chasanov*, 869 A.2d 327 (Del. 2005).

stands out as the nadir in Favata's continuum of egregious professional misconduct in McCoy's case.

## *Conclusion*

The objectives of the Lawyer Disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct.[43] We conclude that any sanction other than suspension would not provide the necessary protection for the public, serve as a deterrent to the legal profession, or preserve the public's trust and confidence in the integrity of the disciplinary process for Delaware lawyers. Therefore, it is hereby ordered, that Favata is suspended from the practice of law as a member of the Bar of this Court for six months and one day.[44] This sanction will require Favata to establish his rehabilitation before he can be re-admitted to practice law as a member of the Bar of this Court.[45]

**Vaughn**, **Justice**, concurring in part, and dissenting in part:

I believe that a suspension of less than six months would be an adequate punishment.

---

[43] *In re McCann,* 894 A.2d 1087, 1088 (Del. 2005).
[44] *See In re Poliquin*, 49 A.3d 1115 (Del. 2012).
[45] DEL. LAWYERS' RULES OF DISCIPLINARY PROCEDURE R. 22.