IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| In The Matter of a | § | |
| Member of the Bar of the | § | |
| of the Supreme Court of Delaware: | § | |
| | § | |
| JEFFREY K. MARTIN, ESQUIRE | § | No. 413, 2014 |
| | § | |
| Respondent. | § | |

Submitted: October 29, 2014
Decided: November 18, 2014

Before **STRINE**, Chief Justice; **HOLLAND** and **RIDGELY**, Justices.

Upon Review of the Report of the Board on Professional Responsibility.
**SUSPENSION IMPOSED**.

Charles Slanina, Esquire, Finger & Slanina, LLC, Hockessin, Delaware, for the Respondent.

Jennifer-Kate Aaronson, Esquire, Chief Counsel, Wilmington, Delaware, for the Office of the Disciplinary Counsel.

***PER CURIAM***:

# I. INTRODUCTION

This is a lawyer disciplinary proceeding. A panel of the Board on Professional Responsibility found that Jeffrey Martin violated Rule 5.5(a) and Rule 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct (DLRPC) by assisting a suspended lawyer, Herb Feuerhake, in the unauthorized practice of law. The Board did not find other rule violations charged by the Office of Disciplinary Counsel (ODC). The Board recommended a private admonition.

Both the ODC and Martin have filed objections to the Board's findings and recommendation. The ODC contends that the Board's findings are not supported by substantial evidence. The ODC seeks Martin's disbarment. Martin contends that there was insufficient proof of any violations and that the matter should be dismissed without any sanction. Alternatively, Martin asserts that a private admonition is the appropriate sanction.

Based on the evidence presented, the record supports a finding that Martin acted knowingly in assisting Feuerhake's unauthorized practice of law and that there is clear and convincing evidence to support the ODC's arguments on appeal. At the time he engaged in this misconduct, Martin was already on probation for violating his ethical duties in the financial management of his law firm, violations that were similar to other past violations. Given that reality, Martin had no excuse for failing to take great care when deciding to engage a suspended lawyer to help

him with pending cases. Although we do not agree with the ODC that this misconduct warrants disbarment, it does require at least the strong sanction of a suspension.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Martin's Relevant Legal Practice*

Martin was admitted to the Delaware Bar in 1985. He worked for a number of years at Elzufon, Austin & Drexler before he left to open his own practice in 1995. Feuerhake worked for Martin from 1998 until 2001 when Feuerhake left to open his own solo practice. From 2004 to 2007, Martin worked for Margolis Edelstein. He left that firm to form a partnership, Martin & Wilson P.A., with Tim Wilson. Early in 2009, Wilson left the firm. Around the same time, one of Martin's employees contacted the ODC to report that Martin had not been paying his taxes.[1] An audit revealed that Martin's books and records did not comply with DLRPC Rule 1.15(b) and that he had failed to file or pay various taxes for certain time periods. As a result, Martin agreed to a private admonition with conditions in May 2009.[2]

During the same time period in 2009, Herb Feuerhake was also being investigated by the ODC for disciplinary violations. As a result of the ongoing

---

[1] *In re Martin*, 2011 WL 2473325, *1 (Del. June 22, 2011).

[2] *Id.*

3

ODC investigation against Feuerhake, Martin agreed to act as Feuerhake's practice monitor. As practice monitor, Martin discussed Feuerhake's active matters with him, including pending deadlines and statutes of limitations. Feuerhake moved his solo practice into Martin's office space. Martin and Feuerhake also worked as co-counsel on cases together, including representing the plaintiffs in two civil rights cases filed in the United States District Court for the District of Delaware, captioned as *Lamb v. Taylor*, C.A. No. 08-CV00324-GMS,[3] and *Barkes v. First Correctional Medical Servs. Inc.*, C.A. No. 06-CV104-LPS. The cases were handled on a contingent fee basis. Martin and Feuerhake had a standing agreement that Martin would receive 60% of any fee and Feuerhake would receive 40%.

In November 2009, the ODC's investigation of Feuerhake led to the filing of a disciplinary complaint against him. Ultimately, on July 13, 2010, this Court suspended Feuerhake from practicing law for a period of two years.[4] Among the conditions of Feuerhake's suspension was a prohibition against performing, directly or indirectly, any act that constituted the practice of law, including sharing or receiving legal fees (except for fees earned before July 13, 2010). The Court also expressly prohibited Feuerhake from having contact with clients (or

---

[3] Throughout the record below, this case is referred to as "the Burns litigation."

[4] *In re Feuerhake*, 2010 WL 2757030, *4 (Del. July 13, 2010).

prospective clients) and witnesses (or prospective witnesses) when acting as a paralegal or legal assistant under the supervision of another Delaware lawyer.

Shortly after Feuerhake's suspension in July 2010, Martin himself was the subject of another disciplinary complaint filed in August 2010. In that complaint, Martin was charged with violating the conditions of his 2009 private admonition by failing to pre-certify his 2010 certificate of compliance, by failing to promptly pay certain taxes, by failing to properly maintain his law firm's books and records, by failing to adequately supervise his non-legal staff, and by filing false statements with the Court in his certificate of compliance.[5] The Board found that Martin had committed most of the charged violations and recommended a public admonition with a public probation.[6] This Court adopted the Board's recommendation. Martin was publicly reprimanded and placed on probation for one year from June 23, 2011 to June 22, 2012.

In the summer of 2012, Carol Waldhauser of the Delaware Lawyers Assistance Program contacted Martin and asked him if he would give another suspended lawyer, Ron Poliquin,[7] a job as a paralegal. Although he initially

---

[5] *See In re Martin*, 2011 WL 2473325, *1 (Del. June 22, 2011).

[6] As to his record-keeping obligations and his duty to supervise his staff, the Board noted that Martin made "no effort to read [ ] Rule 1.15; and . . . apparently blithely went on, thinking his books and records contained all necessary information. . . . There was apparently no basis for him to have made that assumption." *See id*. at *2.

[7] *See In re Poliquin*, 49 A.3d 1115 (Del. 2012).

5

declined, Martin reconsidered after talking to Poliquin's counsel and reviewing this Court's decision suspending Poliquin from the practice of law.

## B. *Martin's Relationship with Feuerhake Post-Suspension*

After this Court suspended Feuerhake in July 2009 and during the period while Martin himself was on disciplinary probation, Feuerhake continued to work in Martin's law office as a paralegal.[8] Martin testified that, although he knew Feuerhake was suspended, he never read the Court's suspension order. The record reflects that Feuerhake researched and drafted briefs in several of Martin's employment cases. For those cases, Feuerhake would submit an invoice, and Martin would pay him an hourly rate as a paralegal. Feuerhake also continued to work as a paralegal on the Burns and the Barkes litigation, which he and Martin had been co-counsel on prior to his suspension. For those two matters, Feuerhake did not receive compensation on an hourly basis. According to an email Feuerhake sent to Martin in September 2011, the two men were continuing, with respect to those two cases, to operate in accordance with the fee agreement they had reached when Feuerhake was licensed to practice law, namely that Martin would receive 60% of the fee and Feuerhake would receive 40%. For the Burns litigation, the email reflected that David Facciolo would receive 20% of the fee because he had

---

[8] *In re Feuerhake*, 89 A.2d 1058, 1059 (Del. 2014) ("During his suspension, Feuerhake worked as a paralegal under the supervision of Jeffrey K. Martin, Esquire.").

referred the Burns matter to Feuerhake. Therefore, Martin's and Feuerhake's percentages were to be reduced to 48% and 32%, respectively.

While suspended, Feuerhake met with plaintiff Lamb regarding the Burns litigation in Martin's office and in court.[9] Feuerhake also exchanged emails with opposing counsel in that case. He attended a pretrial conference with Martin before a United States District Court judge. During the conference and at Martin's request, Feuerhake addressed the judge, distinguished case law, explained the relevance of anticipated trial testimony, lodged objections, and responded to opposing counsel's statements. When the litigation settled in April 2012, almost two years after Feuerhake's suspension, Martin gave Feuerhake $39,466, representing his full 32% share of the contingent fee under the agreement they had reached when Feuerhake was a licensed lawyer.

While suspended, Feuerhake also met and communicated with plaintiff Barkes up to twenty different times to discuss the contents of briefs he wrote and filings by opposing counsel. He attended four depositions in the case at which Barkes was present, and he communicated with four different witnesses being deposed.

As a result of this misconduct, the ODC filed charges against Feuerhake. After the hearing in Feuerhake's case, a panel of the Board recommended his

---

[9] The facts about Feuerhake's post-suspension work come from the Court's disbarment decision in *In re Feuerhake*, 89 A.2d at 1059-60.

disbarment. This Court adopted the Board's recommendation and disbarred Feuerhake on April 4, 2014.[10]

## C. *ODC's Petition Against Martin*

The ODC filed a six-count petition for discipline against Martin, alleging that Martin violated: (i) Rule 3.4(c)[11] by knowingly permitting Feuerhake, a suspended lawyer, to practice law in violation of the Court's suspension order; (ii) Rule 5.3(a)[12] by failing to supervise a nonlawyer assistant adequately and make reasonable efforts to ensure that Feuerhake did not engage in the unauthorized practice of law; (iii) Rule 5.4(a)[13] by sharing legal fees with Feuerhake while he was suspended; (iv) Rule 5.5(a)[14] by assisting Feuerhake in the unauthorized practice of law by allowing him to contact clients, appear in court, and engage in other acts constituting the practice of law; (v) Rule 8.4(d)[15] by engaging in conduct prejudicial to the administration of justice by assisting Feuerhake's unauthorized

---

[10] *Id*. at 1063.

[11] Rule 3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal."

[12] Rule 5.3(a) states that a managing lawyer of a firm "shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that [an employee or associate's] conduct is compatible with the professional obligations of the lawyer."

[13] Rule 5.4(a) states that a lawyer "shall not share legal fees with a nonlawyer."

[14] Rule 5.5(a) states that a lawyer "shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so."

[15] Rule 8.4(d) states that a lawyer shall not engage "in conduct that is prejudicial to the administration of justice."

practice; and (vi) Rule 8.1(a)[16] by knowingly making a false statement when he denied supervising Feuerhake as a paralegal in his response to the ODC's petition. The ODC requested that Martin be disbarred.

### D. *Martin's Response to the ODC's Allegations*

Martin denied nearly all of the ODC's allegations. Martin acknowledged that he knew that Feuerhake was suspended but stated that he never read the suspension order and thus had no knowledge of the terms of Feuerhake's suspension.[17] Martin denied ever supervising Feuerhake during his period of suspension.[18] He further asserted that the fee Feuerhake received as a result of the settlement in the Burns litigation had been approved by the United States Magistrate and was paid to Feuerhake on a *quantum meruit* basis for work he had done on the case before his suspension, which was permitted under the Court's suspension order.

### E. *The Board's Findings on the Charged Violations*

After the violations hearing, which was separated from the hearing on sanctions, the Board found:

- As to Count 1, alleging that Martin knowingly permitted Feuerhake to practice law in violation of this Court's suspension order, the Board

---

[16] Rule 8.1(a) states that, in connection with a disciplinary matter, a lawyer shall not "knowingly make a false statement of material fact."

[17] *See* Ans. to ODC's Petition at 4-5.

[18] *Id*. at 1.

found no violation of Rule 3.4(c). The Board held, "Assuming arguendo that the conditions of Mr. Feuerhake's Suspension Order constitute an obligation under the rules of a tribunal applicable to [Martin], the Panel determined that ODC has not met its burden of proof of establishing by clear and convincing evidence that [Martin] knowingly disobeyed an obligation of the rules of a tribunal."[19] The Board concluded that there was insufficient evidence to establish that Martin knew or should have known of the conditions of Feuerhake's suspension because this Court's suspension order "was not nearly as readily publicly available as the Rules for [Martin] to access."[20]

- As to Count 2, alleging that Martin failed to adequately supervise a non-lawyer assistant, the Board found no violation of Rule 5.3(a). The Board stated, "It can hardly be said that Mr. Feuerhake's unauthorized practice of law was a result of [Martin's] lack of supervision when it occurred in [Martin's] presence."[21]

- As to Count 3, alleging that Martin shared legal fees with a nonlawyer, the Board found no violation of Rule 5.4. The Board concluded that Feuerhake was entitled to his full share of the contingent fee for the work he performed on the Burns litigation before his suspension under a *quantum meruit* theory.[22] The Board found that Martin's failure to pay Feuerhake for the two years he spent working as a paralegal on the case did not "negate the fair value of his pre-suspension services."[23]

- As to Count 4, alleging that Martin assisted Feuerhake in the unauthorized practice of law, the Board concluded that Martin's admission that he requested the Federal District Court's permission for Feuerhake to speak during the pretrial conference in the Burns matter established a violation of Rule 5.5(a).[24] The Board did not find

---

[19] Board's Report at 10.

[20] *Id.* at 12.

[21] *Id.* at 13-14.

[22] *Id.* at 14-15.

[23] *Id.* at 15.

[24] *Id.* at 15-16.

any other violations of Rule 5.5(a) arising from Feuerhake's client meetings and correspondence, attendance at court proceedings and depositions, or signing pleadings on behalf of Martin.

- As to Count 5, alleging that Martin engaged in conduct prejudicial to the administration of justice, the Board concluded that its finding of a violation of Rule 5.5(a) under Count 4 also established that Martin had violated Rule 8.4(d).[25]

- As to Count 6, alleging that Martin had made a false statement when he denied supervising Feuerhake in his answer to the ODC's petition, the Board found no false statement of material fact and thus no violation of Rule 8.1(a).[26] The Board concluded that Martin was just "drawing a distinction between supervising Mr. Feuerhake as compared to Mr. Feuerhake's work."[27]

F. *The Board's Sanction Recommendation*

The Board held a separate sanctions hearing in April 2014. At that hearing, Martin presented the testimony of several witnesses, including Jeffrey Weiner, Esquire, and Cassandra Hosler, a former client, who offered testimony about Martin's good character and reputation.[28] Martin also testified. He expressed remorse and also testified about serious medical issues that he had experienced beginning in 2010.

---

[25] *Id.* at 16.

[26] The ODC does not challenge this finding on appeal.

[27] Board's Report at 16-17.

[28] Sanctions Hearing Tr. at 5-18.

The Board reviewed the ABA Standards for Imposing Lawyer Sanctions[29] and concluded that: (i) Martin had violated Rules 5.5(a) and 8.4(d); (ii) Martin acted knowingly; and (iii) there was no actual injury caused by Martin's misconduct. As aggravating factors, the Board found that Martin has a prior disciplinary record and has substantial experience in the practice of law. The Board did not find, as the ODC argued, that Martin had a selfish motive or that there was a pattern of misconduct. As mitigating factors, the Board found that Martin had a cooperative attitude during the proceedings and also offered several witnesses who testified to his good character and reputation. The Board did not address Martin's expressions of remorse or evidence of personal medical problems as mitigating factors.

The Board concluded that a private admonition was the presumptive sanction and that no adjustment to the sanction was required based on the aggravating factors.

---

[29] *See* ABA Standards for Imposing Lawyer Sanctions, *available at* http://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/corrected_standards_sanctions_may2012_wfootnotes.authcheckdam.pdf.

# III. DISCUSSION

## A. *Standard of Review*

We have the inherent and exclusive authority to discipline members of the Delaware Bar.[30] Although the panel's recommendations are helpful, we are not bound by them.[31] We have an obligation to review the record independently and determine whether there is substantial evidence to support the Board's factual findings.[32] The Board's conclusions of law are subject to *de novo* review.[33]

## B. *Parties' Contentions on Appeal*

The ODC contends that the Board erred in failing to find that Martin knowingly violated a Court order when he allowed Feuerhake, while suspended, to engage in the practice of law, meet with clients, attend depositions, exchange correspondence with opposing counsel, share legal fees, and present arguments to a federal judge. The ODC also argues that the Board erred in recommending a private admonition. The ODC asks the Court to find that Martin violated Rules 3.4(c), 5.3(a), 5.4(a), 5.5(a), and 8.4(d) and to impose the sanction of disbarment.

Martin asserts that the Board erred in finding that he committed any violations of the DLRPC. Martin contends that the Board failed to give due weight

---

[30] *In re Nadel*, 82 A.3d 716, 719 (Del. 2013).

[31] *Id.* at 720.

[32] *In re Reardon*, 759 A.2d 568, 575 (Del. 2000).

[33] *In re Feuerhake*, 89 A.3d 1058, 1060 (Del. 2014).

to the uncontroverted fact that Feuerhake misled Martin, his friend and former colleague, about the restrictions of his suspension. Martin also objects to the Board's finding that he violated Rule 5.5(a) when he asked for the judge's permission for Feuerhake to speak at the pretrial conference. Martin argues that Feuerhake acknowledged that he was attending the pretrial conference as a paralegal and that the federal judge permitted and invited Feuerhake's participation, which the judge had authority to do. Martin also argues that the Board erred in failing to address or include his expressions of remorse and his personal medical problems as mitigating factors. He asks the Court to "mitigate the presumptive sanction of no more than a private admonition to a lesser sanction such as a dismissal with warning or a private probation."[34]

### C. *Martin's Knowledge of the Court's Suspension Order*

We must independently review the record to determine if there is clear and convincing evidence to support a finding of knowing misconduct.[35] Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the contention is "highly probable."[36] Under the DLRPC, "knowing" misconduct denotes "actual knowledge of the fact in question."[37] Because a person

---

[34] Respondent's Objections at 7.

[35] *In re Bailey*, 821 A.2d 851, 863 (Del. 2003).

[36] *Id.*

[37] Del. Lawyers' R. Prof. Conduct 1.0(f).

14

is presumed to intend the natural consequences of his or her actions, "knowing" misconduct may be inferred from the circumstances.[38] Moreover, in the disciplinary context, we have equated "wilful ignorance" to "knowledge."[39]

In this case, there is substantial evidence in the record to support a finding of Martin's knowing misconduct. First and foremost, Martin knew that Feuerhake was suspended, yet he willingly allowed Feuerhake to move into his office space and continue to work on cases for him as a paralegal without reading the Court's suspension order and determining the restrictions on Feuerhake's ability to work *for Martin* as a paralegal. A lawyer with Martin's experience, especially one with Martin's own recent disciplinary history, would have known that the Court's suspension order was publicly available and should have consulted it, which is precisely what Martin did when he was asked to hire another suspended lawyer, Ron Poliquin, to work for him as a paralegal.

Martin knew or intentionally remained ignorant of this Court's order suspending Feuerhake from practicing law. His admitted intentional ignorance of the Court's order should not absolve him of responsibility for complying with its terms.[40] The Board's reasoning that the Court's suspension order was "not nearly as readily publicly-available" as the Court's rules has no basis in fact and does not

---

[38] *Id.*

[39] *See, e.g.*, *In re Nadel*, 82 A.3d 716, 722 (Del. 2013).

[40] *Id*.

15

preclude a finding that Martin knew or should have known of the terms of this Court's suspension order.[41]

### D. *Charges Established by Clear and Convincing Evidence*

The record supports a finding by clear and convincing evidence that Martin knew or should have known of the Court's order suspending Feuerhake. The record also establishes by clear and convincing evidence that Martin allowed Feuerhake to attend depositions, to talk to and meet with clients, and to appear before the District Court and allow him to argue case law. Accordingly, the record establishes that Martin knowingly violated: (i) Rule 3.4(c) by assisting Feuerhake to practice law in violation of the Court's suspension order;[42] (ii) Rule 5.5(a) by assisting Feuerhake in engaging in the unauthorized practice of law; and (iii) Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice by assisting Feuerhake's unauthorized practice.[43]

Furthermore, contrary to the Board's finding, there is clear and convincing evidence that Martin failed to supervise Feuerhake adequately in his role as a paralegal. It is undisputed that Feuerhake worked in Martin's office, even if Feuerhake did not maintain regular office hours and was paid (when he was paid)

---

[41] *See In re Pelletier*, 84 A.3d 960, 963 (Del. 2014) (*quoting In re Nadel*, 82 A.3d at 722).

[42] *See In re Kingsley*, 2008 WL 2310289 (Del. June 4, 2008) (finding a knowing violation of Rule 3.4(c) for assisting a Delaware accountant in violating a prior cease and desist order).

[43] *See In re Tos*, 576 A.2d 607, 610 (Del. 1990) (holding that knowing violations of court obligations are prejudicial to the administration of justice and violate Rule 8.4(d)).

as a subcontractor. Feuerhake shared Martin's office space and conducted research, drafted documents and made telephone calls while he was in Martin's office. Feuerhake participated in the pretrial conference at Martin's request. Feuerhake's work was done on Martin's behalf in Martin's cases. Martin's contention that he only supervised Feuerhake's work but did not supervise Feuerhake is a distinction without a difference in this context.

In fact, to the extent Martin disclaims responsibility for supervising Feuerhake, he is admitting to a violation, because that means he was enabling Feuerhake to practice law in an unsupervised manner in violation of this Court's order. In other words, if Martin was not Feuerhake's supervisor, no one was. What is at issue is Feuerhake's work on cases where Martin was the counsel of record. Under the circumstances, because Martin knew or should have known of the terms of the Court's suspension order, the record supports a finding that Martin violated Rule 5.3(a) by failing to supervise a nonlawyer assistant adequately.[44]

Finally, the Board erred in failing to find that Martin violated Rule 5.4(a) by giving Feuerhake his full pre-suspension percentage of the contingency fee from the settlement of the Burns litigation. As this Court noted in *In re Feuerhake*, "Even though the Suspension Order prohibited Feuerhake from receiving any legal fees following his suspension, the settlement payment was for work he performed

---

[44] *See In re Bailey*, 821 A.2d 851 (Del. 2003).

17

both before and after his suspension. Rather than calculate the appropriate division from the settlement, Feuerhake chose instead to take his full share because he claimed that a more precise figure would have been too difficult to calculate and because he was proud of the quality work he provided to his client."[45]

Given this Court's conclusion that the contingency fee paid to Feuerhake was for work performed both before and after his suspension, the Board's contrary conclusion (which was reached almost four months after the decision in *In re Feuerhake* was issued) that Feuerhake's fee was only for his pre-suspension work on a *quantum meruit* basis is unsupported. The record reflects that, after his suspension, Feuerhake continued to work on the Burns matter for nearly two years. Martin did not compensate Feuerhake as a paralegal on an hourly basis for any of that work. Instead, the two men continued to operate under the same, pre-suspension fee-sharing agreement that they had entered into when they were both duly licensed lawyers. There is clear and convincing evidence that Martin's payment to Feuerhake of his full share of the settlement without an "appropriate division"[46] for pre- and post-suspension work was a violation of Rule 5.4(a).

---

[45] *In re Feuerhake*, 89 A.3d 1058, 1060 (Del. 2014).

[46] *Id.*

## E. *Appropriate Sanction*

In determining the appropriate sanction in a lawyer disciplinary matter, the Court traditionally follows the framework set forth in the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions (the "ABA Standards").[47] The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty or duties violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[48]

Martin's knowing violations of Rules 3.4(c), 5.3(a), 5.4(a), 5.5(a), and 8.4(d) in this case violated duties to his clients, to the legal system, and to the profession. Although there was no resulting harm, Martin's failure to abide by this Court's suspension order and his failure to adequately supervise Feuerhake, his non-lawyer assistant, reflects a knowing disregard for his duties as a member of the Delaware bar and as the supervising lawyer of his law practice, and created the potential for injury.

The ODC argues that Martin's knowing misconduct warrants disbarment. In support of this argument, the ODC cites ABA Standard 6.21, which provides, "Disbarment is generally appropriate when a lawyer knowingly violates a court

---

[47] *See In re Reardon*, 759 A.2d 568, 575-76 (Del. 2000).

[48] *In re Lassen*, 672 A.2d 988, 998 (Del. 1996).

order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding." The ODC also cites ABA Standard 7.1, which provides, "Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." The ODC argues that Martin allowed Feuerhake to engage in the practice of law to benefit himself. Martin relied on Feuerhake's legal expertise without compensating him for it, and both men benefitted from the fee they shared following settlement of the Burns litigation.

But, in our view, the record does not support a finding that Martin's violations, although serious, were egregious enough to warrant disbarment. Nor do we believe there is clear and convincing evidence that Martin violated the rules with the intent to benefit himself. From all of the testimony at the hearing, it appears that Martin's misconduct resulted from his intent to help a long-time friend and former colleague who had fallen on hard times. Although Martin did ultimately benefit from Feuerhake's unauthorized practice of law, there is insufficient evidence that Martin violated the rules with that intent.

Accordingly, ABA Standards 6.22 and 7.2 are more relevant to Martin's case. Standard 6.22 states, "Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." Standard 7.2 states, "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

The ODC argues that several aggravating factors exist in this case: (i) prior disciplinary history; (ii) selfish motive; (iii) pattern of misconduct; (iv) multiple offenses; and (v) substantial experience in the practice of law.[49] The Board found evidence of only two aggravating factors: prior disciplinary history and substantial experience. Although we do not think the record supports a finding of a selfish motive or a pattern of misconduct, Martin was publicly reprimanded in 2011 and placed on probation for one year for, among other reasons, failing to adequately supervise his non-legal staff.[50] He was serving that probation when he engaged in the conduct leading to his current charges. Thus, the factors of prior disciplinary history and substantial experience are properly considered aggravating. But because this prior disciplinary matter involved a failure to supervise staff regarding

---

[49] *See* ABA Standards 9.22.

[50] *See In re Martin*, 2011 WL 2473325 (Del. June 22, 2011).

Martin's books and records obligations, rather than the type of misconduct he engaged in with Feuerhake, we do not believe it reflects a "pattern" of misconduct, as the ODC argues.

As to mitigating factors, the Board found that Martin had a cooperative attitude during the proceedings and presented unrebutted testimony of his good character and reputation. Although not addressed by the Board, Martin also presented unrebutted evidence of his remorse and of personal medical problems that he was experiencing during the time period in question.

Even accepting all of these factors in mitigation, however, they do not outweigh the aggravating factors in order to justify a lesser sanction than suspension, given the seriousness of Martin's misconduct. "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."[51] Importantly, the sanction of suspension is also more consistent with our relevant prior precedent. In *In re Barakat*,[52] we suspended a licensed Delaware lawyer for two years after finding that he had violated Rules 3.4(c) and 8.4(d), among other rules, by knowingly disobeying this Court's rule requiring him to maintain a bona fide office for the practice of law in

---

[51] *See In re Howard*, 765 A.2d 39, 44 (Del. 2000).

[52] 2013 WL 6503320 (Del. Dec. 11, 2013).

22

Delaware. In *In re Nadel*[53] and *In re Pelletier*,[54] we suspended two non-Delaware lawyers for one year in each case after finding that each had violated Rules 5.5(b)(1) and (b)(2) by knowingly engaging in the unauthorized practice of law.[55]

Considering all of the facts in this case, the Rules violated, the ABA Standards, and our relevant prior cases, a sanction of a one year suspension is warranted in Martin's case. This one-year suspension will have an "appropriate, but not unduly chilling, deterrent effect, given the range of authorized sanctions"[56] under the Rules.

## IV. CONCLUSION

For the reasons stated above, it is hereby ordered that Martin be disciplined as follows:

1. Martin hereby is immediately suspended from the practice of law in this State for a period of one year.

2. During the period of suspension, Martin must fully cooperate with the ODC in its efforts to monitor his compliance with the terms of his suspension and shall not: (a) have any contact directly or indirectly constituting the practice of law, including the sharing or receipt of legal fees, except that Martin is entitled to any

---

[53] 82 A.3d 716 (Del. 2013).

[54] 84 A.3d 960 (Del. 2014).

[55] *See also In re Melvin*, 807 A.2d 550 (Del. 2002) (knowing violation of a court order, among other things, warranted an eighteen-month suspension).

[56] *Id.* (*quoting In re Howard*, 765 A.2d 39, 46 (Del. 2000)).

legal fees earned prior to the date of this order; (b) share in any legal fees earned for services by others during such period of suspension. Martin also shall be prohibited from having any contact with clients or prospective clients or witnesses or prospective witnesses when acting as a paralegal, legal assistant, or law clerk under the supervision of a member of the Delaware Bar.

3.      The ODC shall file a petition in the Court of Chancery for the appointment of a Receiver for Martin's law practice pursuant to Rule 24 of the Delaware Lawyers' Rules of Disciplinary Procedure; the Receiver shall provide notice to clients, adverse parties, and others as required by Rule 23 of the Delaware Lawyers' Rules of Disciplinary Procedure; and the Receiver shall make such arrangements as may be necessary to protect the interests of any of Martin's clients and the public.

4.      Martin shall cooperate in all respects with the Receiver, including providing him/her with all law office books and records.

5.      Martin shall promptly pay the costs of the disciplinary proceedings in accordance with the Delaware Lawyers' Rules of Disciplinary Procedure when presented with a statement of costs by the ODC.

6.      As reinstatement is not automatic, should Martin apply for reinstatement, any such application must be made pursuant to Rule 22 of the

Delaware Lawyers' Rules of Disciplinary Procedure following the suspension period.

7.     This Opinion shall be disseminated by the ODC as provided in Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.