**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
**MASTER IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

Final Report: April 28, 2023
Date Submitted: January 3, 2023

William R. Firth, III, Esquire
Emily A. Letcher, Esquire
Cohen, Seglias, Greenhall, Pallas,
& Furman, P.C.
500 Delaware Avenue, Suite 730
Wilmington, DE 19801

Richard E. Berl, Jr., Esquire
Hudson, Jones, Jaywork,
& Fischer, LLC
34382 Carpenter's Way, Suite 3
Lewes, DE 19958

Re: *Apennine Acquisition Co., LLC v. Richard M. Quill, et al.*,
C.A. No. 2022-0503-SEM

Dear Counsel:

Pending before me are motions to dismiss an amended complaint and cancel a related *lis pendens*. The underlying dispute is contractual—the plaintiff alleges that the parties had an oral agreement to form a joint venture to construct condominiums on certain real property. That oral agreement, per plaintiff, was final, partially performed, yet never memorialized. When the plaintiff learned the defendants were entertaining other offers for the property, the plaintiff filed this action and a *lis pendens* against the property. The defendants seek dismissal of the plaintiff's amended complaint arguing the plaintiff failed to plead a reasonably conceivable equitable claim or request for relief and without such, this Court lacks

subject matter jurisdiction.  The defendants also seek an order cancelling the *lis pendens* and assessing the statutory fees.

I find the plaintiff failed to plead a reasonably conceivable equitable claim or request for relief.  Thus, this Court lacks subject matter jurisdiction and the amended complaint should be dismissed, with the statutory leave to transfer.  Because I recommend dismissal on jurisdictional grounds, I recommend the *lis pendens* be denied without prejudice.  This is my final report.

## I.    BACKGROUND[1]

The parties' dispute relates to property located at 203 Savannah Road in Lewes, Delaware (the "Property").[2]  The Property is owned by White Bucks, LLC ("White Bucks"), which is owned 50-50 by Richard M. Quill and Joseph Johnson and Karla Johnson (the "Johnsons", together with Mr. Quill and White Bucks, the "Defendants").[3]

---

[1] All facts are drawn from the amended complaint, Docket Item ("D.I.") 13, and the exhibits attached to it. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004). I decline to consider the additional documents attached to D.I. 10. *See Paul Capital Advisors, LLC v. Stahl*, 2022 WL 3418769, at *9 (Del. Ch. Aug. 17, 2022), as corrected (Aug. 25, 2022) ("In reviewing a motion to dismiss under Rule 12(b)(1), the Court may consider documents outside the complaint, although when a challenge to subject matter jurisdiction is directed to the face of a complaint, the court accepts the plaintiff's allegations of fact.") (cleaned up).

[2] D.I. 13, ¶ 12.

[3] *Id.* at ¶ 13.

In November 2021, Joseph Latina, a real estate broker, introduced Apennine Acquisition Co., LLC ("Apennine"), a real estate development company, to the owners of White Bucks to discuss the Property.[4] Apennine was interested in purchasing the Property to develop residential condominium units thereon.[5] Initially, the discussions went well. On November 10, 2021, Apennine and Mr. Quill met and orally agreed to form a joint venture between Apennine, the Defendants, and Mr. Latina (the "Joint Venture").[6] Through the Joint Venture, the parties would develop residential condominium units on the Property.[7] Before beginning that project, though, "the parties' intention was to 'cash-out' the Johnsons' membership interest in White Bucks . . . with Quill retaining an ownership interest in White Bucks together with [Apennine] and Latina."[8]

The next month, in December 2021, an agreement of sale was prepared whereby Apennine and Mr. Quill would purchase the Property from White Bucks for $1,800,000.00 with closing to occur no later than May 15, 2022 (the "Agreement

---

[4] *Id.* at ¶¶ 11-12.

[5] *Id.* at ¶ 12.

[6] *Id.* at ¶ 14.

[7] *Id.* at ¶ 12.

[8] *Id.* at ¶ 14.

of Sale").[9]  On February 2, 2022, Mr. Johnson initialed, signed, and transferred the Agreement of Sale to Apennine via facsimile, on behalf of White Bucks.[10]  But neither of the buyers executed the Agreement of Sale.[11]

Nevertheless, in the following weeks Apennine moved forward with the Joint Venture.  Apennine approved a site engineer for the project, reviewed development plans, "prepared financing pro formas, conducted a marketing analysis, allocated cash, solicited and negotiated with banks and performed financing appraisals" for the project's development costs.[12]

On February 16, 2022, Apennine and Mr. Quill met again to finalize the terms of the Joint Venture.[13]  Apennine avers that the parties, at that time, "shook hands, orally agreed upon [the] final terms [of the Joint Venture] and to memorialize the terms in writing."[14]  That memorialization, per Apennine, was in a February 23, 2022 email from Michael Scali, who is a partner at, and general counsel for, Apennine.[15]

---

[9] *Id.* at ¶ 15. It is unclear who prepared the Agreement of Sale.

[10] *Id.* at ¶ 16.

[11] *Id.* at Ex. A.

[12] *Id.* at ¶ 17.

[13] *Id.* at ¶ 18.

[14] *Id.*

[15] *Id.* at Ex. B.

In his email, Mr. Scali wrote to Mr. Quill, Mr. Latina, and two others outlining how Mr. Scali saw "the deal/paper working out."[16] Mr. Scali proposed the following: (1) White Bucks would redeem the Johnsons' 50% interest in White Bucks for $400,000.00, (2) Mr. Quill would assign 10% of White Bucks to Mr. Latina and 45% to Apennine for $200,000.00, resulting in Mr. Quill retaining 45%, and (3) White Bucks' operating agreement would be amended to reflect the new ownership with Apennine having decision making control "except for certain items that need unanimous consent."[17]

Contemporaneously with these transactions the parties would also (1) refinance White Bucks' existing $1 million in debt with a construction loan, (2) Mr. Quill would assign "Two Dips agreement to White Bucks," and (3) Mr. Quill and the Johnsons would terminate an existing agreement for assignment of the Johnsons' partnership interests.[18] Mr. Scali invited questions or concerns in response to his email and offered to start drafting.[19] But, despite assurances to the contrary, Apennine's counterparts failed to take any action toward the Joint Venture.[20]

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at ¶ 20.

Months later, on or about May 25, 2022, Apennine discovered the Defendants were engaged in negotiations to sell the Property to other prospective purchasers.[21] Soon after, on June 9, 2022, Apennine commenced this lawsuit.[22] Then, on June 13, 2022, Apennine filed a notice of *lis pendens* against the Property with the Sussex County Recorder of Deeds.[23]

In Apennine's initial complaint, Apennine pled seven (7) counts for (1) breach of oral contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) equitable estoppel, (5) interference with prospective economic advantage, (6) unjust enrichment, and (7) constructive trust.[24] On July 15, 2022, the Defendants filed a motion to dismiss the original complaint under Court of Chancery Rule 12(b)(1) and 12(b)(6).[25] The next day, on July 16, 2022, the Defendants filed a motion to cancel Apennine's *lis pendens*.[26] On August 3, 2022, the Defendants filed a combined opening brief in support of their motions.[27]

---

[21] *Id.* at ¶ 21.

[22] D.I. 1.

[23] D.I. 3.

[24] D.I. 1.

[25] D.I. 8.

[26] D.I. 9.

[27] D.I. 10.

Thereafter, the parties met and conferred and filed a stipulation and proposed order through which Apennine would respond to the motion to dismiss by amending its complaint.[28] I granted that stipulation on September 21, 2022 and Apennine filed its amended complaint on September 23, 2022, adding an eighth count for specific performance (the "Amended Complaint").[29] The Defendants filed another motion to dismiss on October 12, 2022, arguing Apennine failed to state a claim for specific performance under Court of Chancery Rule 12(b)(6).[30] The Defendants incorporated by reference their earlier arguments for dismissal of the remaining claims for lack of jurisdiction and cancelation of the *lis pendens*.[31]

Briefing was complete on November 22, 2022,[32] and I heard oral argument on January 5, 2023, at which time I took the motions under advisement.[33]

---

[28] D.I. 11.

[29] D.I. 12-13. Apennine revised various averments and other counts in the Amended Complaint, although those edits were largely stylistic. *See, e.g.*, D.I. 13, Ex. 1, ¶ 2.

[30] D.I. 15.

[31] *Id.*

[32] D.I. 20.

[33] D.I. 23.

## II.   ANALYSIS

The Defendants seek dismissal for failure to state a claim under Court of Chancery Rule 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1). The standard of review under these sections is settled.

> Under Rule 12(b)(6):
>
> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[34]

Under Rule 12(b)(1), a claim will be dismissed "if it appears from the record that the Court does not have jurisdiction over the claim."[35]

The Defendants argue that even taking Apennine's well-pled allegations as true, Apennine has failed to state a claim for specific performance, which Defendants argue is the only equitable claim in the Amended Complaint. Thus, the Defendants argue that if the specific-performance claim is dismissed, this Court lacks jurisdiction over, and should dismiss, the remaining claims. Apennine disagrees and contends it has multiple equitable claims within this Court's jurisdiction. Regarding

---

[34] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted).

[35] *AFSCME Locals 1102 & 320 v. City of Wilm.*, 858 A.2d 962, 965 (Del. Ch. 2004).

the latter, the Defendants disagree that those claims are equitable or adequately pled. The Defendants also seek an order cancelling the *lis pendens* and assessing the statutory fees. I address these arguments in turn.

### A. It is not reasonably conceivable that Apennine can establish a right to specific performance by the required clear and convincing evidence.

Apennine seeks specific performance of the Joint Venture and the Agreement of Sale. To ultimately prevail on its specific-performance claim Apennine would need to prove, by clear and convincing evidence, "that (1) an enforceable contractual obligation exists; (2) [Apennine] has performed (or is ready, willing, and able to perform) its own obligations; and (3) that the balance of the equities tips in its favor."[36] Here, at the pleading stage, the question is "whether it is reasonably conceivable that [Apennine] can establish a right to specific performance of the [Joint Venture] by clear and convincing evidence."[37] Evidence is clear and convincing when it "produces an abiding conviction that the truth of the contention is 'highly probable.'"[38]

---

[36] *Hastings Funeral Home, Inc. v. Hastings*, 2021 WL 8741648, at *3 (Del. Ch. Nov. 29, 2021), *adopted*, (Del. Ch. 2021).

[37] *Id.*

[38] *In re Martin*, 105 A.3d 967, 975 (Del. 2014).

I find it is not reasonably conceivable that Apennine can establish a right to specific performance of the Agreement of Sale or Joint Venture by the required clear and convincing evidence. Apennine's specific-performance claim for both alleged agreements fails the first prong—an enforceable contractual obligation. I address each agreement in turn.

**1.     It is not reasonably conceivable that Apennine can prove, by clear and convincing evidence, that the Agreement of Sale is an enforceable contract.**

An agreement for the sale of real property is subject to the Statute of Frauds under 6 *Del. C.* § 2714(a), which provides:

> No action shall be brought to charge any person upon any agreement made . . . upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, . . . unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by the party lawfully authorized in writing[.]

Apennine recognizes this hurdle and attempts to plead part performance. "It is a venerable and well-settled rule of law that the statute of frauds does not bar enforcement of an oral agreement that is supported by evidence of partial performance of that agreement. More specifically, partial performance will defeat

the statute of frauds and render enforceable an oral contract for the conveyance of real property."[39]

In *Walton v. Beale*, Vice Chancellor Parsons explained the bounds of partial performance:

> In general, the act relied on as part performance should be an act that would not have occurred absent a contract or agreement relating to the land. Further, the actual part performance must be a joint act, or an act which clearly indicates mutual assent of the parties to the oral contract. Courts generally have found that taking possession of the land, making partial or full payment for the land, rendering services that were agreed to be exchanged for the land, or making valuable improvements on the land in reliance on an oral contract demonstrates part performance. Likewise, courts have found preparatory acts, such as giving directions for conveyances, taking a view of the property or putting a deed in the hands of a solicitor to prepare a conveyance, insufficient to satisfy the partial performance exception.[40]

Apennine's alleged performance falls squarely into the latter category. Apennine pleads that it approved a site engineer, reviewed development plans, prepared financing forms, conducted a marketing analysis, allocated finances, negotiated with banks, and performed financing appraisals for the project's development costs. These are not joint actions or actions clearly indicating mutual assent to a sale of the Property. Rather, they are actions indicative of due diligence

---

[39] *In re Lot No. 36*, 2004 WL 3068348, at *4 (Del. Ch. Dec. 29, 2004).

[40] *Walton v. Beale*, 2006 WL 265489, at *4 (Del. Ch. Jan. 30, 2006), *aff'd*, 913 A.2d 569 (Del. 2006) (citations and quotation marks omitted).

and continued negotiations. I find Apennine has failed to plead facts making it reasonably conceivable that it could establish part performance by clear and convincing evidence. Thus, I recommend the claim seeking specific performance of the Agreement of Sale be dismissed.

> **2. It is not reasonably conceivable that Apennine can prove, by clear and convincing evidence, that the Joint Venture is an enforceable contract.**

To state an enforceable contractual obligation related to the Joint Venture, Apennine needed to plead sufficient factual predicate making it reasonably conceivable it could establish the following by clear and convincing evidence: "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange[d] legal consideration."[41] I find it is not reasonably conceivable that Apennine can prove the parties intended to be bound to, or that there are sufficiently definite terms for, the Joint Venture by clear and convincing evidence.

Intent to be bound is an objective inquiry that requires this Court to look at the "overt manifestation of assent—not subjective intent."[42] In *Eagle Force Holdings, LLC v. Campbell*, the Delaware Supreme Court clarified that "all essential

---

[41] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[42] *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1229 (Del. 2018).

or material terms must be agreed upon before a court can find that the parties intended to be bound by it and, thus, enforce an agreement as a binding contract."[43] This is similar to, but distinct from the second prong, which requires sufficiently definite terms. "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do."[44]

I find Vice Chancellor Zurn's analysis in *Hyetts Corner, LLC v. New Castle County* most instructive.[45] Therein, "[a] dispute over landscaping and maintaining open space in a new housing development . . . spurred a rift between the developer and New Castle County."[46] The parties' efforts to resolve their disputes culminated in an email from the County which explained what an agreement may look like, if drafted.[47] The developer argued that the email was an enforceable contractual obligation because it contained all essential terms and demonstrated a reasonably conceivable claim "that the parties struck a definitive and enforceable agreement to

---

[43] *Id.* at 1230.

[44] *Id.* at 1232.

[45] 2021 WL 4166703 (Del. Ch. Sept. 14, 2021).

[46] *Id.* at *1.

[47] *Id.* at *3-4.

agree."[48]   Emphasizing that agreeing to negotiate was not an offer and any offer needs to be accepted to form a contract, Vice Chancellor Zurn dismissed the breach-of-contract claim.[49] She explained, "[a] reasonable negotiator in [the developer's] position could not have believed the . . . [e]mail 'concluded the negotiations' between the parties. Because there was no 'complete meeting of the minds' between [the parties] . . ., no contract was formed between them."[50]

The same is true here.  Apennine pleads that the parties agreed to form a joint venture in their November 2021 meeting, then agreed to the final terms of the Joint Venture orally at the February 2022 meeting.  Those oral terms, per Apennine, were "specifically set forth in the February 23, 2022 e-mail."[51]   But that email is equivocal, and a reasonable negotiator could not have believed the email concluded the negotiations between the parties. That email begins with a preface from Mr. Scali from Apennine: "Here is how I see the deal/paper working out."[52]  Then, before and after specifying the terms as he envisioned them, Mr. Scali invited "any questions or

---

[48] *Id.* at *4.

[49] *Id.* at *5.

[50] *Id.* at *7.

[51] D.I. 13, ¶ 24.

[52] *Id.* at Ex. B.

concerns" or "any issues," respectively.[53]  When he did not receive a response after more than one month, he replied all with a question: "Are we good to proceed to document here?"[54]  Reading this email in a light most favorable to Apennine, at best it indicates that the parties were close to finalizing a deal and were hashing out the final terms. It does not alone, nor coupled with the allegations in the Amended Complaint, support a finding that it is reasonably conceivable that Apennine can prove the parties intended to be bound to the terms in Mr. Scali's email by clear and convincing evidence.

Likewise, the email undermines Apennine's contention that the parties agreed upon sufficiently definite terms during their meetings.  Even if the parties, as Apennine avers, left their meetings having agreed to work together, the email reflects much uncertainty as to the specific terms of their relationship and the Joint Venture. Rather than memorialize the definite terms agreed to, the initial email reflects Mr. Scali's view on how the relationship might work; his follow up email was likewise inconclusive.  With the uncertainty evident in Mr. Scali's emails, a reasonable negotiator could not have believed negotiations between the parties had concluded. Thus, it is not reasonably conceivable that Apennine can prove by clear and

---

[53] *Id.*

[54] *Id.*

convincing evidence that the alleged oral agreement to form a joint venture has sufficiently definite terms.

Taken together, Apennine has failed to plead facts making it reasonably conceivable it could prove an enforceable contractual obligation related to the Joint Venture by clear and convincing evidence. As such, I recommend the claim for specific performance thereof be dismissed.

> **B.     Apennine has failed to adequately plead any other equitable claims or requests for relief, leaving this Court without subject matter jurisdiction.**

This Court is a court of "limited jurisdiction."[55]  "[T]he Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[56]  Under Court of Chancery Rule 12(h)(3) "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."

---

[55] *Clark v. Teeven Hldg Co., Inc.*, 625 A.2d 869, 880 (Del. Ch. 1992).

[56] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citations omitted).

If the specific-performance claim is dismissed, as I recommend herein, the following counts remain: (1) breach of contract, (2) breach of the implied covenant, (3) promissory estoppel, (4) equitable estoppel, (5) interference with prospective economic advantage, (6) unjust enrichment, and (7) constructive trust. Apennine argues its claims for equitable estoppel, unjust enrichment, and constructive trust invoke this Court's equitable jurisdiction.[57] The Defendants disagree, arguing that the claims are either not equitable or are not pled adequately to invoke jurisdiction. I address these claims in turn.

### 1. Apennine failed to plead a reasonably conceivable equitable-estoppel claim.

The parties do not appear to dispute that equitable estoppel is an equitable claim within this Court's jurisdiction. As described by then-Vice Chancellor Strine, a claim for equitable estoppel is a "traditional equitable claim[.]"[58] Thus, if adequately pled, this claim could be sufficient to invoke this Court's jurisdiction.

---

[57] In its answering brief, Apennine appeared to argue that Count Five, interference with prospective economic advantage, was also an equitable claim. D.I. 16, p.10. But Apennine's counsel clarified at oral argument that it was not the claim, but rather the relief Apennine was seeking, that sounded in equity. D.I. 24, 30:2-24. Such relief is addressed herein and found insufficient to sustain this Court's subject matter jurisdiction.

[58] *Mirzakhalili v. Chagnon*, 2000 WL 1724326, at *7 (Del. Ch. Nov. 9, 2000).

But Apennine failed to plead a reasonably conceivable claim for equitable estoppel

in Count Four in the Amended Complaint.

     To state a claim for equitable estoppel, Apennine must plead facts supporting

the following elements:

> (1) conduct by the party to be estopped that amounts to a false
> representation, concealment of material facts, or that is calculated to
> convey an impression different from, and inconsistent with that which
> the party subsequently attempts to assert, (2) knowledge, actual or
> constructive, of the real facts and the other party's lack of knowledge
> and the means of discovering the truth, (3) the intention or expectation
> that the conduct shall be acted upon by, or influence, the other party
> and good faith reliance by the other, and (4) action or forbearance by
> the other party amounting to a change of status to his detriment.[59]

"A party's reliance must be both reasonable and justified under the circumstances.

Thus, the standards for establishing the elements of equitable estoppel are stringent;

the doctrine is applied cautiously and only to prevent manifest injustice."[60]

     Apennine's equitable-estoppel claim is largely duplicative of its breach-of-

contact claim. Apennine pleads that it (1) was unaware the parties' agreement

"would not be honored" by the Defendants who were negotiating with others, (2)

reasonably relied on the Defendants honoring the agreement, and (3) "suffered a

prejudicial change of condition as a result of its reliance," because it was deprived

---

[59] *Hyetts Corner, LLC v. New Castle Cnty.*, 2021 WL 4166703, at *10 (citations omitted).

[60] *Id.*

of the benefit of the agreement and lost other opportunities.[61] Such is the essence of the underlying contract claims.

Apennine has not, as it was required to, pled facts that would transform such contractual (or quasi-contractual) claim into one for equitable estoppel. Such requires "conduct by the party to be estopped that amounts to a false representation, concealment of material facts, or that is calculated to convey an impression different from, and inconsistent with that which the party subsequently attempts to assert."[62] Thus, I find Count Four insufficient to invoke this Court's jurisdiction.

### 2. Apennine's unjust-enrichment claim is not sufficient to prize the doors of this Court.

"Unjust enrichment is a traditionally legal claim."[63] To invoke this Court's equitable jurisdiction, a plaintiff must plead facts supporting a reasonably conceivable claim that the plaintiff has "no adequate remedy at law."[64] Apennine has failed to so plead—rather, Apennine's unjust-enrichment claim is an off-the-

---

[61] D.I. 13, ¶¶ 61-69.

[62] *Hyetts Corner, LLC*, 2021 WL 4166703, at *10. *Cf. Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *8 (Del. Super. June 6, 2012) (Slights, J.) (holding that a plaintiff cannot state a fraud claim "merely by intoning the *prima facie* elements of [fraud] while telling the story of the defendant's failure to perform under the contract").

[63] *Parseghian as Tr. of Gregory J. Parseghian Revocable Tr. v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *9 (Del. Ch. June 21, 2022).

[64] *Id.*

contract theory of recovery, pled alternatively to its breach-of-contract claim, through which Apennine seeks monetary damages. Because such relief is available at the Superior Court, I find Count Six insufficient to invoke this Court's jurisdiction.[65]

### 3. Apennine failed to plead a reasonably conceivable claim for a constructive trust.

Count Seven purports to state a claim for constructive trust over the Property. A constructive trust is an equitable remedy, rather than a standalone claim.[66] It is a trust "imposed by a court of equity as a remedy to correct the unlawful vesting, or

---

[65] *See Crosse v. BCBSD, Inc.*, 836 A.2d 492, 496–97 (Del. 2003) (explaining when an unjust-enrichment claim is brought as "an off-the-contract theory of recovery that accompanies the breach of contract allegations[,]" the claim is a "legal, not equitable claim", over which "[t]he Superior Court typically has jurisdiction").

In its answering brief, Apennine points me to *LVI Grp. Invs., LLC v. NCM Grp. Hldgs, LLC*, 2018 WL 1559936, at *17 (Del. Ch. Mar. 28, 2018) and *In re Tr. FBO duPont Under Tr. Agreement Dated August 4, 1936*, 2018 WL 4610766, at *13 (Del. Ch. Sept. 25, 2018) to argue that its unjust-enrichment claim should survive the motion to dismiss. D.I. 16, p.12. Both cases, however, addressed whether unjust enrichment could survive at the pleading stage as an alternative theory. Neither addressed whether an add-on unjust-enrichment claim was sufficient to invoke this Court's subject matter jurisdiction. I find, as plead here, Apennine's claim is not.

[66] *iBio, Inc. v. Fraunhofer USA, Inc.*, 2020 WL 5745541, at *12 (Del. Ch. Sept. 25, 2020); *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *6 (Del. Ch. Apr. 28, 2014) ("This Court has recognized that a party may, on rare occasions, mistakenly plead a remedy as an enumerated cause of action. In these situations, this Court has tended to permit the remedial claims to remain in the complaint, but it has generally excluded them from its analysis at the motion to dismiss stage. In effect, this Court treats remedial claims not as independent causes of action but instead 'as having been included in [the] prayer for relief.'").

assertion of, legal title."[67] Unlike specific performance, a constructive trust "is not designed to effectuate the presumed intent of the parties, but to redress a wrong. When one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty, a constructive trust will be imposed. Some fraudulent or unfair and unconscionable conduct is essential."[68]   When a party seeks to invoke this Court's jurisdiction through an equitable remedy, "this Court must take a practical view of the complaint to determine what a plaintiff really wants."[69]

Throughout Apennine's constructive-trust count, Apennine emphasizes its interest in money damages, and merely adds that "[t]he Property is unique, and the monetary loss . . . cannot presently be calculated. Further, [Apennine] cannot be fairly and entirely recompensed by money damages given the deprivation of its unique interests in the Joint Venture . . . and the Property."[70]  But the uniqueness of real property would be a matter resolved through specific performance, a claim I find Apennine failed to adequately plead.  Further, that monetary loss "cannot

---

[67] *E. Lake Methodist Episcopal Church, Inc. v. Trs. of Peninsula-Del. Ann. Conf. of United Methodist Church, Inc.*, 731 A.2d 798, 809 (Del. 1999).

[68] *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) (citations omitted).

[69] *Intel Corp. v. Fortress Inv. Gp., LLC*, 2021 WL 4470091, at *5 (Del. Ch. Sept. 30, 2021).

[70] D.I. 13, ¶ 93.

presently be calculated" is not sufficient to state the absence of a remedy at law.[71]

Likewise, Apennine's averment that money damages would be inadequate is unsupported and conclusory. And, turning back to the purpose for a constructive trust—to redress a wrong—Apennine has failed to plead any facts making it reasonably conceivable that the Defendants actions were fraudulent, unfair, or unconscionable. Finally, taking a practical view of the complaint, I find what Apennine really wants is money damages to make it whole from the failed project; it has an adequate remedy at law through which it can seek such recovery.

\* \* \*

Because Apennine failed to plead a reasonably conceivable equitable claim or remedy, I find the Amended Complaint should be dismissed for lack of subject matter jurisdiction. Under 10 *Del. C.* § 1902, Apennine should be granted sixty (60) days from a final dismissal decision to request transfer to a court with jurisdiction.

**C.      The motion to cancel the *lis pendens* should be denied without prejudice to renew before a court with jurisdiction.**

The Defendants also ask that this Court issue an order cancelling the *lis pendens* and awarding the statutory fees. Under 25 *Del. C.* § 1606, a court "upon

---

[71] *Cf. Anglo Am. Sec. Fund, LP v. S.R. Glob. Int'l Fund, LP*, 829 A.2d 143, 156 (Del. Ch. 2003) ("Proof of . . . damages and of their certainty need not be offered in the complaint in order to state a claim.").

motion of any party aggrieved, shall direct any recorder of deeds to cancel a notice of pendency and mark the indices accordingly if: . . . [t]he claim relating to the real estate is one which, if sustained, would entitle the party solely to recover money or money damages." The *lis pendens* statute also sets forth discretionary cancellation "if the court determines that there is not a probability that final judgment will be entered in favor of the party recording the notice of pendency."[72]

Here, the Defendants argue both—that the *lis pendens* must be cancelled because, if anything, Apennine could claim money damages but also, under the discretionary test, such claim is not likely to succeed. Apennine counters that it "has a reasonable probability of success on the merits and at this stage in the litigation and [the] Defendants have not established a record suggesting otherwise."[73]

I find this matter is best presented to a court with jurisdiction over the remaining claims and should be denied without prejudice. "Subject matter jurisdiction is in essence a question of the power of a court to hear and decide the case before it."[74] Herein, I find this Court lacks jurisdiction over the remaining claims pled in the Amended Complaint. Although there may be some overlap

---

[72] 25 *Del. C.* § 1608.

[73] D.I. 16, p. 17.

[74] *Abbott v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022), *aff'd*, 284 A.3d 77 (Del. 2022).

between my analysis and the mandatory cancellation framework, I find this Court is not the appropriate tribunal to address or direct cancellation of the *lis pendens*. If this action is transferred, the receiving court may entertain such request.

## III.  CONCLUSION

For the above reasons, I find Apennine failed to plead a reasonably conceivable equitable claim. Thus, I recommend the Amended Complaint be dismissed for lack of subject matter jurisdiction. Under 10 *Del. C.* § 1902, Apennine should be given sixty (60) days from a final dismissal decision to request transfer to a court with jurisdiction. I also recommend that the cancellation of Apennine's *lis pendens* be denied without prejudice to renew before a court with jurisdiction over Apennine's claims. This is my final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,

/s/ *Selena E. Molina*

Master in Chancery